## *In re* LESTER, mayor.

The mayor of the city of Savannah, who is *ex-officio* the presiding judge of a court of record, is not subject to the *subpœna duces tecum*, commanding him to bring into the superior court "the information docket" of his court, to be used in evidence before the grand jury, either in a specified case or generally; and that officer, in refusing to obey such a precept, is not guilty of contempt of a process of the court, for which he is liable to be punished.

(*a.*) Th official action of the mayor's court can be shown only by its records, and if that action becomes material in an investigation before the grand jury in any specified case, it should be shown by a copy thereof duly certified by the clerk under the seal of the court.

(*b.*) The supervisory control of the superior court over inferior judicatories exists only for specified purposes, viz., either to correct errors in their proceedings in a particular case, or to command them to fulfill their official duties in such a case where, from any cause, a defect of legal justice would ensue from a failure or improper discharge of such duties, or to prohibit or arrest illegal proceedings by any officer of such courts, where no other legal remedy or relief is given, and where such interference is required by some principle of right, necessity and justice. This jurisdiction is exercised by statutory writs, such as *certiorari*, *mandamus* or prohibition. But an entire record cannot be removed from one court to another by a notice to the officers to produce it, or by a *subpœna duces tecum* directed to and served upon them.

(*c.*) While each member of the grand jury is under obligation to make diligent inquiry, and to present truly all infractions of the

criminal law which may be given the body in charge, or may come to the knowledge of any of them, touching the service in which they are engaged, and while the powers of that body are inquisitorial to a certain extent, yet they have to be exercised within well defined limits. They can find no bill nor make any presentment, except upon the testimony of witnesses sworn in a particular case, where the party is charged with a specified offense; nor can they *subpœna* a witness to testify before them as to his general knowledge of violations of the penal laws, when the fact to be investigated has not been discovered by the grand jury or any member thereof, and when that body knows nothing of any person connected with or guilty of the offense.

(*d.*) It is not intimated that the State's prosecuting officer may not, if he sees proper to do so, make rseach for evidence and secure its forthcoming by serving *subpœnas* upon witnesses in anticipation of the empanelling and qualification of the grand jury before whom the matter is to be investigated, provided he states in the *subpœna* the names of the parties and the offense to be investigated.

(*e.*) In a proper case, a *subpœna duces tecum* may issue in a cause pending before the grand jury or to be brought before that body.

November 9, 1886.

Courts. Practice in Superior Court. Witness. *Subpœna.* Jury and Jurors. Criminal Law. Before Judge ADAMS. Chatham Superior Court. March Term, 1886.

Five *subpœnas duces tecum* were issued by the clerk of the superior court of Chatham county, November 17, 1885, directed to "Honorable Rufus E. Lester, mayor of the city of Savannah," calling upon him to be and appear at the superior court and to bring with him a certain book or docket, known as the information docket of the city council of Savannah, used during the months of September and October, 1885, and also the book or docket containing the disposition of cases tried before the mayor, to be used as evidence by the state in certain cases pending before the grand jury. Four of these stated the cases in which testimony was desired, while the fifth merely stated that it was in certain cases, without naming them. They were served, and upon the failure of the mayor to comply with their requirements, a rule *nisi* was issued against him,

calling on him to show cause why he should not be attached for contempt. He answered that the statutory provision upon which these *subpœnas* were based contemplated civil cases and not criminal proceedings before the grand jury; that when they were issued, none of the cases were pending cases; that the grand jury had not been organized and was not organized until the first Monday in December thereafter; that the *subpœnas* did not show that the evidence was material, and it was neither material nor admissible; that the mayor of Savannah is the presiding officer and judge of the police court of that city, which is made by statute a court of record; and that one court of record has no authority to compel, by *subpœna*, the production before it of the original records of another; and that the *subpœnas* were not issued upon the order of the judge nor of the grand jury, but by the clerk solely on request of the solicitor-general.

The court held that the *subpœnas* were legally issued, and refused to discharge the rule, and the respondent excepted.

Geo. A. Mercer; J. R. Saussy; Garrard & Meldrim, for plaintiff in error.

F. G. duBignon, solicitor-general, for the State.

Hall, Justice.

While this record makes several questions, it is material to consider, at any length, only one, and that is, whether the mayor of the city of Savannah, who is *ex-officio* the presiding judge of a court of record, is subject to a *subpœna duces tecum*, commanding him to bring into the superior court "the information docket of his court," to be used in evidence before the grand jury, either in a specified case or generally, and whether that officer, in refusing to obey such a precept, is guilty of contempt of the process of the court for which he is liable to be punished.

It is obvious that, as mayor and judge of the mayor's court, he could not be made a witness; the records of his court show his official action and it can only be shown in this way.   If that action becomes material in an investigation before the grand jury in any specified case, it should be shown by a copy thereof, duly certified by the clerk under the seal of the court.   The supervisory control of the superior court over inferior judicatories exists only for specified purposes, viz., either to correct errors in their proceedings in a particular case, or to command them to fulfill their official duties' in such a case where, from any cause, a defect of legal justice would ensue from a failure or improper discharge of such duties; or to prohibit or arrest illegal proceedings by any officer of such courts where no other legal remedy or relief is given, and where such interference is required by some principle of right, necessity and justice.   This jurisdiction is exercised by writs designated by the statutes, such as the writ of *certiorari* or *mandamus* or prohibition.  Code, §§247, 3198, 3209(a), 4049

An entire record cannot be removed from one court to another by a notice to the officers to produce it, or by a *subpœna duces tecum* directed to and served upon them. The writs above mentioned can only issue on the order of a judge of the superior courts, while a notice may be issued and served by a party to a suit, and the *subpœna duces tecum* is issued by the clerk of the court without any order from a judge.   None of the prerequisites required to obtain either of these writs must be observed in issuing the *subpœna duces tecum*.   The principle relied on by the solicitor to show that the party summoned was in contempt in refusing to respond to the *subpœna duces tecum*, and in refusing to produce the document required, that the court may see and determine whether the document is a proper one to be used in the case, is undeniable and is well supported by the authorities he cites, wherever the party subpœnaed is subject to the process; but the difficulty here is that a judge or clerk is not subject to such process, when

records and files of the court are the things sought to be used. While a portion of the information docket of the mayor's court might possibly throw light upon a particular case undergoing investigation before a grand jury, yet the necessity of having the entire docket for that purpose is not clearly perceived; that it might afford information on which to base prosecutions by special presentment, and might furnish the names of persons who have violated the penal laws and of witnesses by whom such violations could be proved, is altogether probable. It is true that each member of the grand jury is under a solemn obligation to make diligent inquiry and to present truly all infractions of the criminal law, which may be given the body in charge, or may come to the knowledge of any of them touching the service in which they are engaged. That the powers of the body are inquisitorial to a certain extent is undeniable; yet they have to be exercised within well defined limits. Anything they can find out by their own inquiry and observation is legitimate and praiseworthy, but they have no authority to force private persons or the officers of other courts to disclose to them who may have violated the public laws, and the names of persons by whom such infractions can be established;—in short, to make every man a spy upon the conduct of his neighbors and associates, and compel him to violate the confidence implied in holding social intercourse with his fellows by forcing him to become a public informer. Such an exercise of power would be in derogation of general principles essential to the enjoyment of rights regarded as sacred and paramount in the intercourse between man and man; and these rights have been carefully guarded, not only by the spirit of our law, but by its express enactments. The grand jury can find no bill nor make any presentment, except upon the testimony of witnesses sworn in a particular case, where the party is charged with a specified offense, to speak the truth, the whole truth, and nothing but the truth; and this court, in *Ashburn's* case, 15 *Ga.*

246, held, where a sweeping oath, materially different from that prescribed by the statutes, was administered to witnesses, that an indictment found on testimony of persons so sworn was invalid, and ought to be quashed or dismissed. If such is necessarily the result of a finding upon an investigation thus conducted, where is the authority for subpœnaing a witness to testify before the grand jury as to his general knowledge of violation of the penal laws, when this fact has not been discovered by the grand jury, or any member thereof, and when that body knows nothing of any person connected therewith or guilty thereof? It is the right of any citizen or any individual of lawful age to come forward and prosecute for offenses against the state, or when he does not wish to become the prosecutor, he may give information of the fact to the grand jury, or any member of the body, and in either case, it will become their duty to investigate the matter thus communicated to them, or made known to one of them, whose obligation it would be to lay his information before that body. This, however, differs widely from forcing a person to reveal his knowledge to the inquest. This latter process is in the nature of an unlawful search, against which citizens are protected by constitutional provisions. Neither houses, nor desks, nor secretaries, nor other places of deposit, can by such general proceedings be opened and rifled of their contents, for the purpose of enabling the grand jury to find out whether a crime has been committed, with a view of presenting it. General warrants, issued for accomplishing such a purpose, are absolutely void, and will afford no protection to any officer or party engaged in their execution, when called upon to answer for an invasion of personal rights under such circumstances. In saying thus much, however, we do not intend to intimate that the state's prosecuting officer may not, if he sees proper to do so, make search for evidence and secure its forthcoming by serving *subpœnas* upon witnesses in anticipation of the empanelling and qualification of the grand jury, before

whom the matter is to be investigated; he is certainly not bound to do so, but he violates no official duty in thus acting, provided he is careful to state in the *subpœna* the names of the parties and the offense to be investigated; so that this is an ethical rather than a legal question, to be determined by. him in accordance with his own sense of propriety and right.

We do not agree with counsel that a *subpœna duces tecum* cannot issue in a cause pending before the grand jury, or to be brought before that body; there are cases, as in libel or forgery, etc., where the instrument, upon which the indictment or presentment is founded, may be in the hands of a third party, who is unwilling to produce it, and who cannot be reached in any other way. The language of the statute authorizing this precept is general and embraces all cases, and without a resort to such a process, there might, and in many cases doubtless would, be a failure of justice.

Judgment reversed.