### 46381. VAUGHN v. THE STATE.
(381 SE2d 30)

PER CURIAM.
William Glenn Vaughn was found in contempt of an order of Clayton Superior Court and sentenced to ten days in jail, probated on the condition he perform one hundred hours of community service. Vaughn appeals.

According to the facts found by the trial court the June 29, 1988 edition of the *Clayton News/Daily* published an article by "Billy" Vaughn entitled, "Confessions Of A Dope Dealer." An editorial note indicated the story was that of a drug dealer whose identity was disguised through the use of the fictitious name "Carlos" but otherwise true. The note went on to state the article was published to inform the public of the seriousness of the problem of drug trafficking in the county.

Vaughn claimed he interviewed Carlos under a promise of confidentiality. Carlos told him that he sells more than one hundred pounds of marijuana per month and can make "almost $5,000 in 45 minutes" and that "it's a hell of a business." He told of his source of illegal substances and his marketing techniques.

Vaughn was subpoenaed before the Grand Jury of Clayton County to testify in a case identified by an indictment against "Carlos (Last Name Unknown)." When Vaughn testified about some matters but refused to identify Carlos he was taken before a judge of the Superior Court for a hearing. After the hearing the judge found no state

or federal constitutional or other protection for Vaughn under the circumstances and ordered him to go back before the grand jury and identify Carlos. When Vaughn refused he was held in contempt.

1. Vaughn contends he has a right under the constitutions of the United States and of the State of Georgia to refuse to disclose the identity of his informant. He asserts the guaranty of freedom of the press affords him a newsgatherer's right not to disclose a confidential news source. We observe that the United States Supreme Court has interpreted the Federal Constitution to the contrary in *Branzburg v. Hayes,* 408 U. S. 665 (92 SC 2646, 33 LE2d 626) (1972). We decline to interpret the Constitution of Georgia to afford any greater right and therefore find no protection under these circumstances.

2. Vaughn also contends the grand jury lacked power to compel him to testify because it did not have a sufficient indictment before it. It was insufficient according to Vaughn because no person was named as the accused, only "Carlos (Last Name Unknown)." OCGA §§ 15-12-71 & 74. We do not interpret *In re Lester,* 77 Ga. 143, 147 (1886), to preclude the action of the grand jury in this case. That opinion holds that a grand jury may not force a person to come before it for a fishing expedition into the general knowledge of criminal activity known by him but may only proceed in a particular case where a party is charged with a specific offense. Here there is a particular case against a certain individual whose correct name is unknown to the grand jury. We hold this constituted a sufficient matter before the grand jury and authorized a subpoena for Vaughn's testimony.

*Judgment affirmed. All the Justices concur, except Hunt, J., who concurs specially, and Gregory, J., who dissents. Weltner, J., disqualified.*

HUNT, Justice, concurring specially.

I agree with the majority that the judgment in this case should be affirmed. I do not agree, however, that, in some other case, the principles outlined by Justice Gregory in his dissent might not create, for some other defendant, an immunity from the compulsion to testify.

Additionally, I write to commend Justice Gregory for the careful and original thought he has devoted to this vexing area of the law. Were I convinced that the information that the grand jury was seeking from the defendant was, indeed, within the realm of ideas rather than of factual detail, I would be inclined to join in the dissent.

GREGORY, Justice, dissenting.

According to the Georgia Constitution "[n]o law shall be passed to curtail or restrain the freedom of speech or of the press." Ga. Const. 1983, Art. I, Sec. I, Par. V. We are asked to decide whether

this proscription is violated by laws[1] construed to allow a grand jury to subpoena a newspaper reporter and, when he refuses to divulge the identity of a person who was the source for a published article revealing information about the drug scene in the locale, allow a judge to hold the reporter in contempt and order his punishment.

The facts (as reported in the majority opinion) are very important to this opinion because it does not undertake the task of deciding whether a "reporter's privilege" exists.[2] It is not construing a mere statutory or common law privilege, but constitutional rights. It considers only the fifth paragraph of the bill of rights embodied in the Georgia Constitution, rights of all citizens, and decides if the laws in question as applied to the facts violate its bidding. If the result tends to carve out an area of privilege against compelled testimony beneficial to those citizens who report in the press, so be it.

1. Though a profusion of writing exists on the subject generally, I will set forth a brief sketch of my view of the mission of the guarantees of freedom of speech and the press under the Georgia Constitution relating to the present inquiry.

Under our system of government sovereignty is vested in the people and there it rests in all circumstances. The people created a government to act as their agent in administering laws and carrying out numerous tasks an orderly society must have done in order to flourish. But the government is limited entirely by the sovereignty of the people and by particular restrictions expressly placed on the government in its creation. Preeminent among these restrictions is the imperative that no law shall curtail or restrain freedom of speech or of the press. It is preeminent because it directly affects the ability of the sovereign to decide the basic direction our society will take.[3] Such decisions depend on a supply of information which can only be communicated to a sovereign people by mass methods such as the press.

From the free flow of numerous ideas the sovereign ultimately

---

[1] OCGA §§ 15-1-3; 24-10-25.

[2] Nor do we have a claim of privilege based on a reporter's risk of loss of employment should he disclose his source as in *Plunkett v. Hamilton*, 136 Ga. 72 (7) (70 SE 781) (1911). Neither does this opinion address the rights of a criminal defendant versus a "journalistic privilege" as in *Ga. Communications Corp. v. Horne*, 164 Ga. App. 227 (1) (294 SE2d 725) (1982). Further, this opinion does not address the issues under the Federal Constitution as in *Hurst v. State*, 160 Ga. App. 830 (1) (287 SE2d 677) (1982). Instead, I consider the right of a free press under the Georgia Constitution as it affects every citizen who chooses to engage in the activity of a free press.

[3] These ideas about freedom of speech and the press are certainly not original but come from a survey of many ideas including those expressed in the dissenting opinion of Justice Douglas in *Branzburg v. Hayes*, 408 U. S. 665, 711 (92 SC 2646, 33 LE2d 626) (1972) where credit for a considerable part is given other individuals including James Madison and Alexander Meiklejohn. In, The First Amendment Is An Absolute, 1961 Sup. Ct. Rev. 245, 254, Meiklejohn, in turn, cites Justices Holmes, Harlan, Frankfurter and others. The process which produces these ideas is essentially evolutionary.

chooses some, eliminates others, and directs the course of the state. Without the free flow of these ideas the state loses direction. The press plays a peculiar role in this process because it is through the press the ideas are reported to the sovereign. There is no other effective way to report to the sovereign than through the press. If the sovereign was an individual rather than the people collectively, it would be possible to employ special agents to gather ideas and facts from all sources and bring them to the sovereign. Obviously, this cannot be done effectively other than by means of mass communications when the sovereign is the mass of persons called the people. The sovereign has determined it is in the best interest of all that it receive these ideas. No law may interfere with the process.

One task the people have assigned the government is to ferret out crime. This is a very important task but it must be accomplished within the restrictions laid down in support of a concern which the wisdom of the people declares even more essential, the free flow of ideas to the sovereign.

2. Before us is a clash between the task of investigating criminal activity given the government by the people and the restriction the people place on the government concerning free flow of ideas. Obviously the former must yield to the extent of any conflict between the two. The greater prevails over the lesser.[4] The Constitution orders it so, and puts the issue beyond the power of the government, including the courts, to decide otherwise. Since we are bound to uphold the Constitution and it plainly tells us no law may curtail or restrain the freedom of the press, the only possible avenue to affirm the trial court is to decide the laws in question do not curtail or restrain the freedom of the press. That I simply cannot, in good faith, do.

Vaughn was emersed in the milieu of ideas. He was about the business of reporting on the extent of drug trafficking in the community. That is a matter of concern to the sovereign in sifting among many ideas in order to give direction to the state. The subject of his inquiry was in the realm of ideas. It was not a mere investigation into an isolated fact bound event which might stir public curiosity. Making the distinction between ideas and facts is important though the line between the two may be unclear at times. This case addresses only the vital area of ideas. It does not reach the lower level of mere fact reporting. Vaughn sought to disclose the extent of drug trafficking in the community and his report generated ideas worthwhile to the sovereign in directing the state concerning that subject. His may fall short of the loftiest ideas in the mix but they are at least useful to

---

[4] Fortunately, in this case we do not have to resolve a conflict between the right of a free press in this context and rights of an accused. That awaits another day.

the sovereign.

3. I would hold that laws which require Vaughn to disclose the identity of the source of information for his report to the sovereign in this case curtail or restrain freedom of the press. In order to develop the ideas about the drug scene, Vaughn needed to communicate with those involved. Confidentiality was an element bearing on his ability to enter into such communications. While there may be some instances in which those involved in criminal activity might discuss their activities with others for publication without confidentiality of their identity there are bound to be other instances where this is not so. To the extent the latter is the case there is a curtailment or restraint on the freedom of the press. We are not free to hold that a little restraint is all right. Laws which destroy that confidentiality curtail and restrain freedom of the press in direct proportion to the blockage of information resulting from the absence of confidentiality. Therefore, I would construe the laws in a constitutional manner and hold Vaughn cannot be compelled to identify his source under these circumstances.

DECIDED JULY 11, 1989.

*Long, Aldridge & Norman, Albert G. Norman, Jr., Bruce P. Brown, Simmons, Ballard & Thompson, Steven H. Ballard,* for appellant.

*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney,* for appellee.

*Powell, Goldstein, Frazer & Murphy, V. Robert Denham, Jennifer Falk Weiss, Paul Vancil, Charles C. Olson, Terrence B. Adamson,* amici curiae.