S98A2001, S99A0626. IN RE KEITH PAUL.
(513 SE2d 219)

FLETCHER, Presiding Justice.

Keith Paul, a reporter for the *Savannah Morning News*, wrote a newspaper article reporting on a jailhouse interview with Arthur Hill who was under arrest for the murder of Annie Geohaghan. As a result, the state subpoenaed Paul seeking unpublished information about the interview, but Paul asserted the reporter's privilege under OCGA § 24-9-30. Ruling that the qualified privilege did not apply, the trial court ordered Paul to answer most of the parties' questions. Because the state has not shown that Paul waived the privilege or that the information sought is material, necessary, and unobtainable by other means, we hold that the state shield law protects him from

disclosing his confidential sources and unpublished information. Therefore, we reverse.

In a pre-trial motion, Hill moved to suppress all statements that he made to law enforcement officers in the Hogansville and Savannah police departments. The state issued a subpoena seeking all Paul's notes, tapes, and other information relating to his interview of Hill. Paul moved to quash the subpoena. The trial court requested that the state and Paul enter stipulations on his role in interviewing the defendant. In response, Paul filed a stipulation that he went to the county jail and asked to meet with Hill, provided a picture identification as requested, interviewed Hill alone in the area set aside for visitors, is unaware of anyone reading Hill his *Miranda* rights, and retained no notes or tapes from his interview. The state refused to agree to the stipulation because it failed to address the voluntariness of Hill's interview with the reporter.

The trial court then ordered both the state and Hill to submit interrogatories to Paul. The state submitted 58 interrogatories and Hill issued 35 seeking confidential sources and unpublished information. Paul objected to most of the interrogatories on the grounds that the information sought was privileged and protected from disclosure under the state shield law. The state argued that all its questions were relevant to determine whether the reporter was acting as a state agent and, therefore, whether the defendant's statement to the reporter was voluntary.

The trial court found that Hill's statements to Paul constituted a confession that was obtained after Hill had an attorney appointed to represent him. The court further found that the interrogatories were material to the issue of whether the statements could be used in the trial, the information could not be obtained by any other means, and the information was necessary to both parties to properly present their case. As a result, the trial court granted the state's motion to compel and ordered Paul to answer 26 of the state's interrogatories and 21 of the defendant's interrogatories.

Paul filed a direct appeal and an application for an interlocutory appeal in this Court and the Court of Appeals of Georgia. We transferred his application to the court of appeals, but granted the writ of certiorari from its denial of the application. We consolidated that case with the direct appeal already pending here to consider the issues of appellate jurisdiction and the state shield law.

## DIRECT APPEAL OF DISCLOSURE ORDER

In 1990, the Georgia General Assembly enacted OCGA § 24-9-30 granting a qualified privilege against compelled disclosure of infor-

mation to persons who gather and disseminate news.[1] The rationale for the privilege is that "compelling disclosure of unpublished material or confidential sources chills the free flow of information to the public."[2] News stories based on confidential sources and information enable citizens to make more informed decisions about the conduct of government and its respect for individual rights; at times the stories have aided the investigation and prosecution of organized crime and government corruption.[3] Because of these important interests, a majority of states have adopted a statutory shield law, and another 18 states recognize a reporter's privilege based on constitutional or common law.[4]

Since Georgia's shield law was enacted, our state appellate courts have considered three times whether the qualified privilege in OCGA § 24-9-30 applies to information sought from a news reporter in a criminal case.[5] In each case, the trial court refused to require the reporter's testimony, and the defendant raised the issue as part of his direct appeal of his conviction. Thus, we have never addressed the appropriate procedure for appealing an order compelling the reporter to disclose sources or information.

OCGA § 5-6-34 provides for a direct appeal of all final judgments "where the case is no longer pending in the court below." Besides final judgments, the statute provides for the direct appeal of judgments or orders that may have an irreparable effect on the rights of parties, such as rulings in contempt, injunction, and mandamus actions.[6] In addition, this Court has held that parties may file a direct appeal of a "collateral order," despite the absence of a final judgment terminating the underlying action.[7] A direct appeal is allowed in this limited situation because the issue is substantially separate from the basic

---

[1] 1990 Ga. Laws 167.

[2] See Susan A. Dewberry, *Witnesses: A Qualified Reporters' Privilege*, 7 GA. ST. U. L. REV. 286, 288 (1990).

[3] See Carl C. Monk, *Evidentiary Privilege for Journalists' Sources: Theory and Statutory Protection*, 51 MO. L. REV. 1, 13-16 (1986) (describing examples).

[4] See Jeffrey S. York, *The Reporter's Privilege in Georgia: "Qualified" to Do the Job?*, 9 GA. ST. U. L. REV. 495, 496 (1993), citing Richard Tofel, *The Case for a National Reporter's Shield Law*, 127 N.J. L.J. 733 (1991).

[5] See *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991) (trial court properly allowed reporter to successfully invoke privilege during testimony); *Moclaire v. State*, 215 Ga. App. 360, 363 (451 SE2d 68) (1994) (trial court did not err in disallowing reporter's hearsay testimony); *Nobles v. State*, 201 Ga. App. 483, 486-487 (411 SE2d 294) (1991) (trial court did not err in quashing subpoena of reporter).

[6] See OCGA § 5-6-34 (a) (2) - (8) (providing for the direct appeal of judgments or rulings in specific situations that have a final or irreparable effect on the rights of parties).

[7] See *Scroggins v. Edmondson*, 250 Ga. 430, 431-432 (297 SE2d 469) (1982) (permitting direct appeal of order granting motion to cancel lis pendens notice); *Patterson v. State*, 248 Ga. 875, 877 (287 SE2d 7) (1982) (allowing direct appeal from order denying plea of double jeopardy); see also *Johnson & Johnson v. Kaufman*, 226 Ga. App. 77, 81-82 (485 SE2d 525) (1997) (holding that discovery order was not subject to direct appeal).

issues presented in the complaint, an important right may be lost if review had to await final judgment, and nothing further in the underlying action can affect the issue on appeal.[8]

Because of the collateral nature of the reporter's privilege issue in most cases, we conclude that reporters who are not parties in the underlying action should not have to wait until the case is concluded before appealing an order that requires them to disclose information. The disclosure order typically is a final decision concerning the news reporter. In this case, for example, the order rejecting the privilege claim and compelling Paul to answer the interrogatories is a final order concerning him as a non-party, unlike the usual discovery order. Moreover, the issue of whether a reporter should be compelled to reveal information is separate from the principal issue in a criminal trial of whether the accused is guilty of the crime charged in the indictment. Furthermore, the public interest in a free press would be irreparably harmed if review of the order compelling disclosure had to await a jury verdict in the murder case. Either the reporter would have already revealed the information or been imprisoned for failing to obey the disclosure order. Therefore, we hold that non-parties engaged in news gathering may file a direct appeal of an order denying them the statutory reporter's privilege under the collateral order exception to the final judgment rule.[9]

Whether this Court or the court of appeals is the proper court to hear the direct appeal depends on the nature of the underlying action. Since this appeal arises from a collateral order in a murder case, this Court has jurisdiction to decide the issue.[10]

## ANALYSIS OF HILL'S ADMISSION OF GUILT

Whether Hill's incriminating statements to Paul are admissible arose at the *Jackson-Denno*[11] hearing on the defendant's motion to suppress all statements made to law enforcement officers. The trial court found that Hill's statements to reporter Paul "constitute a confession of guilt to the crime of murder" and were obtained after Hill was appointed counsel. On appeal, we accept the trial court's factual

---

[8] See *Scroggins*, 250 Ga. at 432; see also *Cohen v. Beneficial Loan Corp.*, 337 U. S. 541, 546 (69 SC 1221, 93 LE 1528) (1949) (recognizing a small class of cases with collateral claims "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated").

[9] Cf. *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576, 578 (292 SE2d 815) (1982) (providing for a direct appeal of order closing pretrial hearings and trial in criminal case as most effective means for protecting the right of the public and news media to be present).

[10] See *State v. Thornton*, 253 Ga. 524 (322 SE2d 711) (1984); see also *Patterson*, 248 Ga. at 875 (concluding court of appeals had jurisdiction over double jeopardy claim when defendant is not accused on a capital felony).

[11] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

findings that are undisputed, but independently apply the legal principles to the facts.

Under this standard of review, we conclude that Hill's incriminating statements during the interview with Paul were not a confession that required the trial court to decide whether it was voluntary under *Jackson-Denno* or made after the defendant was advised of his *Miranda*[12] rights. The undisputed evidence shows that Paul was acting solely in his capacity as a reporter for the *Savannah Morning News* when he interviewed Hill. The reporter did not become a state agent simply by questioning Hill in the jail[13] nor did he obtain Hill's incriminating statements as part of a custodial interrogation.[14] Despite this flaw in the trial court's analysis, however, we still must decide whether the state has shown that the reporter's privilege does not apply to the information it seeks.

## GEORGIA'S SHIELD LAW

Prior to 1990, there was no qualified reporter's privilege in this state. In *Vaughn v. State*,[15] we held that state constitutional right to a free press did not protect a reporter from disclosing the identity of a confidential source. In *Howard v. Savannah College of Art and Design*,[16] we held that a reporter did not have a qualified privilege under state law to refuse to answer questions during a deposition in a civil case. In response, the Georgia General Assembly enacted OCGA § 24-9-30.[17]

The state shield law provides a qualified privilege for persons engaged in the gathering and dissemination of news. It protects against the "disclosure of any information, document, or item obtained or prepared in the gathering or dissemination of news." Thus, the statutory language does not distinguish between the source's identity and information received from that source or between non-confidential and confidential information.[18] The privilege applies in both civil and criminal proceedings, but only where

---

[12] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1996).

[13] See *Burgan v. State*, 258 Ga. 512, 515 (371 SE2d 854) (1988) (affirming trial court finding that cellmate who initiated contact with defendant and elicited his inculpatory statement was not a state agent).

[14] See *Wilson v. State*, 264 Ga. 287, 290 (444 SE2d 306) (1994) (holding that murder suspect's inculpatory statements made to inmate in adjoining cell did not violate defendant's fourteenth amendment right to due process due to lack of coercive police activity). See generally *Miranda*, 384 U. S. at 444 (defining a custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody").

[15] 259 Ga. 325, 326 (381 SE2d 30) (1989).

[16] 259 Ga. 795, 796 (387 SE2d 332) (1990).

[17] See generally Susan A. Dewberry, supra, note 2, at 286-290.

[18] See id. at 293-294.

the journalist is not a party. To overcome the privilege, the party seeking the information must show that the privilege is either waived or that the information meets a three-part test. Under that test, the party must show that the information "(1) Is material and relevant; (2) Cannot be reasonably obtained by alternative means; and (3) Is necessary to the proper preparation or presentation of the case of a party seeking the information, document, or item.[19] This test is similar to the qualified reporter's privilege found in many states.[20]

In our only previous case, we held that the "information already publicly disclosed" in the news article was waived, but that the reporter properly invoked the privilege when she declined to reveal the identity of her confidential sources.[21] In that case, the reporter had written a news article based on information from three former employees of the sheriff's department who described a systematic policy of eavesdropping on attorney-client discussions in the county jail. The evidence showed that fewer than twelve people met the reporter's description of her informants and the defense team had not sought to contact any of them. Therefore, we concluded that the defendant failed to show that the undisclosed information could not have been reasonably obtained by other means, the second prong of the test.[22] As a result, the reporter did not have to reveal her confidential sources.

## STATE'S FAILURE TO OVERCOME PRIVILEGE

In this appeal, the issue is whether the state has shown that the qualified privilege has been waived or that the information sought meets the three-part test of OCGA § 24-9-30. Although the defendant filed interrogatories as directed by the trial court, he never filed a motion to compel responses in the trial court or a brief in this appeal. At the hearing on the state's discovery motion, defense counsel stated that he was interested in obtaining answers only if the state succeeded in compelling the reporter's testimony and that the defendant's questions were the same ones that he would ask any police officer about a confession. Thus, this case does not involve a conflict between the defendant's right to a fair trial and the public's right to a free press. Rather, the appeal presents a conflict between the public's right to evidence at a criminal trial and its competing right to the

---

[19] OCGA § 24-9-30.
[20] See, e.g., S.C. Code Ann. § 19-11-100 (West Supp. 1998).
[21] See *Stripling*, 261 Ga. at 9.
[22] See id.; see also *Nobles v. State*, 201 Ga. App. at 487 (holding that defendant failed to pierce the reporter's shield of confidentiality because information sought from a television news reporter was not relevant).

unencumbered flow of information through the news media.

A review of the statutory language, legislative intent, and case law shows that the state has failed to establish waiver of confidential sources and other undisclosed information. Unlike some states, the Georgia statute does not limit the privilege solely to confidential sources,[23] but protects against the disclosure of any information obtained or prepared. The reporter's privilege belongs to the person engaged in the gathering and dissemination of news, not the source, and waiver may occur when the news person publishes the confidential information or voluntarily testifies.[24] Contrary to the state's contention, publication of part of the information gathered does not waive the privilege as to all of the information gathered on the same subject matter because it "would chill the free flow of information to the public."[25] For these reasons, we conclude that Paul did not waive his qualified privilege against disclosure of his confidential sources and unpublished information by writing a news article based on his interview with Hill.

In addition, the state has failed to overcome the privilege by proving the information sought meets the three-prong test under the shield law. First, the state seeks much information that is not material and relevant. Included in this category are questions related to the circumstances of the interview, such as when and where it occurred, and questions traditionally asked of a police officer concerning a custodial interrogation. For example, there are interrogatories inquiring when and how the reporter found out that an attorney represented Hill, whether the reporter advised Hill of his rights under *Miranda* or made promises to him in exchange for the interview, whether Hill referred to his attorney during the interview, and why the reporter did not call Hill's attorney to notify him about the interview before it occurred and to inform him about the interview after it took place. These questions all stem from the state's erroneous premise that the statement made to the reporter is analogous to a statement made to a police officer. Without some evidence that Paul was acting as a state agent, we conclude that these questions about

---

[23] See, e.g., Ala. Code § 12-21-142 (exempting news-gathering persons from disclosure of sources); see also *The Lexington Herald-Leader Co. v. Beard*, 690 S.W.2d 374, 377-378 (quoting Kentucky statute that protects against disclosure of sources); see generally Monk, supra note 3 at 50 n.262 (listing eight state statutes).

[24] See *Stripling*, 261 Ga. at 9 (finding waiver of information already published); see also *Remeta v. State*, 522 So. 2d 825 (Fla. 1988) (newspaper and television reporters testified about interviews with defendant during his murder trial).

[25] Susan A. Dewberry, supra, note 2, at 294; see *Stripling*, 261 Ga. at 9; see also *State v. Davis*, 720 So. 2d 220 (Fla. 1998) (reversing decision that privilege applied only to confidential sources and holding that Florida common law provides a qualified reporter's privilege against the disclosure of both nonconfidential and confidential information relevant to a criminal trial).

*Miranda* warnings, Hill's attorney, and other circumstances of the interview do not seek relevant or material information.

Second, the state has failed to show that it could not reasonably obtain much of the information it seeks by alternative means. For example, several questions seek the identity of law enforcement officers and jailers who may have had public contact with Paul or served as a confidential source. Yet, the state has not shown that it sought the jail logs to determine when the reporter visited the jail, inquired about which employees were on duty or saw Paul with Hill, or asked whether any city police officer or jailer had talked with the reporter. The state cannot obtain the identity of confidential sources or information from the newspaper under the second prong of the test without first exerting an effort to obtain the same information from county and city employees.[26]

Third, the state has not shown that the reporter's testimony is necessary for the state to prosecute Hill for murder.[27] Although the state contends that it needs Paul's testimony to prove Hill's mental state at the time he made the incriminating admissions to Paul, the state has already presented evidence at pre-trial hearings of Hill's mental capacity and demeanor when he confessed to police. Not only does the state have at least two confessions on videotape, where the jury can observe the defendant, but the state also presented expert testimony of a forensic psychiatrist at the *Jackson-Denno* hearing concerning Hill's competency to stand trial and whether he was suffering from any mental illness or delusion. Thus, the state does not need the reporter's testimony to prepare or present its case to the jury concerning Hill's mental state when he confessed to police in Hogansville and Savannah.

In conclusion, the state has not established that Paul waived unpublished information or that this information is relevant, necessary for the state's case, and cannot be reasonably obtained by other means. Therefore, we hold that the reporter's privilege protects Paul from disclosing the confidential sources and undisclosed information that the state seeks in its motion to compel.

*Judgment reversed. All the Justices concur.*

---

[26] See *Stripling*, 261 Ga. at 9 (rejecting defendant's contention that reporter could not invoke privilege when "the defense team made no effort to contact" any of the former employees of the sheriff's office).

[27] Cf. *In re Schuman*, 552 A.2d 602, 609 (N.J. 1989) (refusing to compel reporter to testify concerning confession published in the newspaper because its contents could be obtained through defendant's statements to police and letters and phone conversations with his former lover).

DECIDED MARCH 8, 1999 —
RECONSIDERATION DENIED MARCH 18, 1999.

*Hull, Towill, Norman & Barrett, James B. Ellington, Nancy S. Gentry,* for appellant.

*Spencer Lawton, Jr., District Attorney, Christine S. Barker, Assistant District Attorney, Darden & Moyers, Richard M. Darden,* for appellee.

*Dow, Lohnes & Albertson, Peter C. Canfield, Sean R. Smith, Thomas M. Clyde,* amicus curiae.