297 Ga. 244
FINAL COPY

S15A0447. CROSDALE v. THE STATE.

HINES, Presiding Justice.

Dario Reynaldo Crosdale ("Crosdale") appeals from his convictions and sentences for malice murder, aggravated assault, and possession of a firearm during the commission of a crime, all in connection with the deaths of his wife, Mona Crosdale ("Mona"), and her cousin, Cleveland Lanford Roberts ("Roberts").  For the reasons that follow, we affirm.[1]

---

[1] The crimes occurred on June 7, 2005.  On June 7, 2006, a Clayton County grand jury indicted Crosdale for the malice murder of Mona Crosdale, the malice murder of Cleveland Lanford Roberts, the felony murder of Mona Crosdale while in the commission of aggravated assault, the felony murder of Cleveland Lanford Roberts while in the commission of aggravated assault, the aggravated assault of Mona Crosdale with a pistol, the aggravated assault of Mona Crosdale with a hammer, the aggravated assault of Cleveland Lanford Roberts with a pistol, possession of a firearm during the commission of the crime of aggravated assault of Mona Crosdale, and possession of a firearm during the commission of the crime of the murder of Cleveland Lanford Roberts.  Crosdale was tried before a jury June 22-24, 2010, and found guilty of all charges.  On June 24, 2010, Crosdale was sentenced to terms of life in prison without the possibility of parole for the malice murders, twenty years in prison for the aggravated assault of Mona Crosdale with a pistol, twenty years in prison for the aggravated assault of Cleveland Lanford Roberts with a pistol, and terms of five years in prison for each count of possession of a firearm during the commission of a crime, all to be served consecutively; the remaining charges either merged with a crime for which a sentence was entered or were vacated by operation of law.  See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Crosdale filed a motion for new trial on July 15, 2010, which he amended on August 8, 2013, and amended again on April 28, 2014.  On July 21, 2014, the motion, as amended, was denied.  Crosdale filed a notice of appeal on August 5, 2014, and the appeal was docketed in this Court for the January 2015 term and submitted for decision on the briefs.

Crosdale conducted his own defense at trial. Construed to support the verdicts, the evidence presented showed that Crosdale and Mona had a son and a daughter, and that Roberts was temporarily living with them. The day before the killings, Mona told a friend that she was going to take the children to her parents in another state; that same day, Crosdale purchased a handgun, took the children to a babysitter's home for an overnight stay, and returned home. There, he approached Roberts and Mona as they were seated at the kitchen table, eating. Crosdale fired multiple shots at Roberts and Mona with the newly-purchased handgun, including a fatal shot to Roberts's head and several others to his torso and arm; two projectiles also struck Mona, one in the leg and one in the chest; she fled to another room on the ground floor of the house, where Crosdale bludgeoned her to death with a hammer he had purchased two weeks before, striking her multiple times on the head and neck. Crosdale then locked the handgun in an upstairs safe.

Crosdale later went to a church he had attended approximately five years earlier, where a regularly-scheduled 6:00 a.m. prayer meeting was disbanding. He encountered Louis Clark in the parking lot, who remembered Crosdale from his prior attendance. Crosdale asked Clark if he could see the senior pastor, who

was unavailable, and then asked to see the senior pastor's wife, who was also unavailable. Crosdale then asked to speak with the assistant pastor; Clark informed him that he was now the assistant pastor,[2] and Crosdale said that he wanted "to talk about a couple of things." Clark asked how Crosdale's wife was, and Crosdale responded that that was one of the things he wanted to talk about. Crosdale then told Clark that "something bad" had happened; he first said that he had shot two people in self-defense, and then said that Roberts attacked him with a knife, that his wife came between them "and tried to grab the gun," and both Roberts and Mona were shot; he did not mention striking Mona with a hammer. Clark enquired whether they might be alive and suggested that they call 911, and Clark did so.[3]

Crosdale told a responding law enforcement officer that Roberts attacked him with a knife, that he shot Roberts in self-defense, and that he accidentally shot his wife when she tried to get the pistol. Crosdale was wearing a shirt with Mona's blood on it. Law enforcement officers investigated the crime scene, and

[2] During the hearing on Crosdale's motion for new trial, Clark described his position at that time as "an administrative pastor."

[3] During the hearing on Crosdale's motion for new trial, Clark testified that he asked whether the victims might need help, "[s]o from there, you know, we talked about the merit of calling and checking on them and so from that point we called 911."

Crosdale was read his *Miranda*[4] rights, placed under arrest, and transported to police headquarters for further questioning. While en route to police headquarters, a detective asked him where he worked, and Crosdale told him. Crosdale then asked: "Did you find the hammer?" The detective asked: "What?" Crosdale responded that he had put the hammer in a trash receptacle at a gas station near his house, and had "swung the hammer to get his wife off of him." Law enforcement officers later found the hammer used to bludgeon Mona where Crosdale said it would be.

At trial, Crosdale testified that: the killer of Mona and Roberts was a man named Juan Sanchez; Crosdale and Roberts had agreed to help a woman recover $35,000 from Sanchez, her former boyfriend; while Mona and Roberts were away from the house, Crosdale answered the door to find Sanchez and another man, both with firearms; the two men took Crosdale to the master bedroom, where they saw the receipt for the handgun he had purchased; the men bound and gagged Crosdale; Mona and Roberts returned to the house; Mona went upstairs; Sanchez and the other man forced Mona and Crosdale to go downstairs with them; Sanchez used Crosdale's handgun to shoot Roberts; after Mona

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

refused to perform a sexual act with Sanchez, he bludgeoned her to death with the hammer; Sanchez forced Crosdale to place the hammer in the trash receptacle at the gas station; Sanchez forced Crosdale to drive to the location where his children were; Sanchez then forced him to go to the church and confess to a pastor, as if Crosdale were a member of the Roman Catholic faith, which was Sanchez's upbringing; and, Crosdale told Clark and the investigating police officers exactly what Sanchez told him to tell them. At no time during the investigation did Crosdale tell anyone about Sanchez and the other man.

1. Crosdale contends that admitting evidence of the matters he related to Clark violated the privilege set forth in former OCGA § 24-9-22, which provided that communications to certain clergy "made by any person professing religious faith, seeking spiritual comfort, or seeking counseling" were privileged and not a subject about which testimony could be received.[5] However, when

---

[5] Former OCGA § 24-9-22 read:

> Every communication made by any person professing religious faith, seeking spiritual comfort, or seeking counseling to any Protestant minister of the Gospel, any priest of the Roman Catholic faith, any priest of the Greek Orthodox Catholic faith, any Jewish rabbi, or to any Christian or Jewish minister, by whatever name called, shall be deemed privileged. No such minister, priest, or rabbi shall disclose any communications made to him by any such person professing religious faith, seeking spiritual guidance, or seeking counseling, nor shall such minister, priest, or rabbi be competent or compellable to testify with reference to any such communication in any court.

Clark's testimony was offered, Crosdale made no objection, and appellate review of the issue has been waived. *Wright v. State*, 296 Ga. 276, 283 (2) (766 SE2d 439) (2014). As to Crosdale's contention that the privilege set forth in former OCGA § 24-9-22 can never be waived, this Court has recognized that it can. *Willis v. State*, 287 Ga. 703, 706 (2) (699 SE2d 1) (2010). In any event, the privilege was never asserted at trial for the court's resolution. Compare id. See also *Alternative Health Care Systems v. McCown*, 237 Ga. App. 355, 360 (5) (514 SE2d 691) (1999).

2. Crosdale also contends that the trial court should have conducted a hearing before admitting evidence of what he told Clark, and that evidence of what he told Clark, and all evidence subsequently discovered by virtue of Crosdale's statements to Clark, should have been excluded. Again, Crosdale did not raise any such issue at trial. See *Wright*, supra. To the extent that Crosdale contends that a *Jackson v. Denno*[6] hearing was warranted because Clark was acting as an agent of law enforcement when Clark discussed with Crosdale calling 911 and when Clark made the call, there is no evidence that he filled any

This privilege is now found in OCGA § 24-5-502, effective January 1, 2013.

[6] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

6

such role.[7]  See *In re Paul*, 270 Ga. 680, 684 (513 SE2d 219) (1999).  Compare *Thorpe v. State*, 285 Ga. 604, 610-611 (6) (678 SE2d 913) (2009).  Further, any spiritual exhortation on Clark's part that led Crosdale to agree to call 911 would not constitute coercion.  See *Heard v. State*, 287 Ga. 554, 557 (2) (697 SE2d 811) (2010).  Accordingly, this enumeration of error has no merit.

3.  Finally, Crosdale asserts that, without the evidence he challenges in Divisions 1 and 2, supra, there was insufficient evidence to support his convictions.  However, as noted above, the referenced evidence was admitted without objection.  The evidence presented at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Crosdale was guilty of the crimes of which he was convicted.  See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Judgments affirmed.  All the Justices concur.

Decided June 1, 2015.

---

[7] At Crosdale's request, the trial court conducted a *Jackson v. Denno* hearing prior to admitting testimony regarding Crosdale's query to the police officer transporting him whether investigating officers had found the hammer.  Crosdale does not enumerate error regarding the decision to admit that evidence.

Murder. Clayton Superior Court. Before Judge Collier.

Cerille B. Nassau, for appellant.

Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.