S98P0013. SALLIE v. THE STATE.
(499 SE2d 897)

THOMPSON, Justice.

This is a death penalty case. William C. Sallie was convicted of malice murder and other crimes, and the jury recommended a death sentence.[1] Because one of Sallie's trial lawyers was laboring under a conflict of interest, we reverse the convictions and remand for a new trial.

1. Considered in the light most favorable to the verdict, the evi-

---

[1] The crimes occurred on March 29, 1990. Sallie was indicted by the Bacon County Grand Jury on July 10, 1990, for malice murder, aggravated assault, armed robbery, kidnapping with bodily injury (2 counts), burglary, theft by taking and possession of a firearm during the commission of a felony. The case was tried from March 25-30, 1991, and the jury acquitted Sallie of armed robbery and theft by taking and convicted him of the remaining counts. The jury recommended a death sentence for the murder, and the trial court additionally imposed a life sentence for each kidnapping count, twenty years for the burglary, twenty years for the aggravated assault, and five years for the possession of a firearm during the commission of a felony, all sentences to be served consecutively. Sallie filed a motion for new trial on April 26, 1991, and an amended motion for new trial on November 1, 1993. After a hearing, the motion for new trial was denied on July 28, 1997. This case was docketed on September 17, 1997, and orally argued on January 20, 1998.

dence showed that Sallie was embroiled in divorce proceedings with his wife, Robin. In the early morning hours of March 29, 1990, Sallie entered the home of his in-laws, where his wife and infant son were staying. He was armed with a pistol and carrying handcuffs, and he had also cut the telephone lines to the house. Sallie proceeded directly to the master bedroom and shot Robin's parents, killing his father-in-law and wounding his mother-in-law. Sallie then abducted his wife and her sister, took them to a trailer he had rented in Liberty County, and raped them. The evidence of Sallie's guilt is sufficient to support the convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Sallie contends that one of his appointed trial lawyers, Wendell Boyd English, was operating under a conflict of interest that effectively denied Sallie his Sixth Amendment right to counsel. We agree. Shortly after his arrest, the trial court appointed Earl McRae to defend Sallie. McRae asked for assistance and the trial court appointed Boyd English as McRae's co-counsel in May 1990. English represented Sallie until the conclusion of his trial in March 1991.

The conflict arises from English's concurrent employment as the sole judicial law clerk for the Waycross Judicial Circuit. Employment records show that English was employed as the circuit's law clerk from April 1987 to May 1989, and from August to October 1990. He was rehired in December 1990, four months before Sallie's trial, and continued as the circuit's law clerk until 1996.

The state claims that English was a part-time law clerk who only worked for the chief judge of the circuit. English states in his affidavit that he was hired by the chief judge as his personal law clerk and that he had no contact in his capacity as a law clerk with the other two superior court judges in the Waycross Circuit, including the trial judge. Payroll records, however, show that English was expected to work at least 40 hours per week and that his monthly pay ranged from about $1,800 in 1987 to $2,350 in 1996. In addition, English's personnel forms list his position as "Law Clerk — Waycross Judicial Circuit," and state that he serves the circuit. OCGA § 15-6-28 (a), the statute which authorized English's position, provides that the chief judge of each judicial circuit can hire one law clerk or court administrator *for the circuit*. Thus, under state law, only one law clerk position per circuit may be compensated with state funds and English's payroll records clearly show that he was paid by the state. See OCGA § 15-6-28 (a), (b), (h). Although English served at the pleasure of the chief judge of the Waycross Circuit, OCGA § 15-6-28 (e), it is clear that his position served the entire circuit and all three superior court judges in the circuit.

The federal and state constitutions guarantee criminal defendants the effective assistance of counsel. *Strickland v. Washington*,

466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); Ga. Const., Art. I, Sec. I. "Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." *Strickland,* supra at 688, citing *Cuyler v. Sullivan,* 446 U. S. 335, 346 (100 SC 1708, 64 LE2d 333) (1980). Undivided loyalty is an essential element of the right to counsel. "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U. S. 261, 271 (101 SC 1097, 67 LE2d 220) (1981).

We have never before addressed a conflict of interest that arises from a lawyer's simultaneous role as criminal defense attorney and law clerk in the same court where he is trying the case. We have also not uncovered any cases in other jurisdictions that present the same issue. Most criminal conflict-of-interest cases involve one attorney representing multiple defendants. See, e.g., *Meyers v. State,* 265 Ga. 149, 150 (454 SE2d 490) (1995); *Mitchell v. State,* 261 Ga. 347 (405 SE2d 38) (1991); *Wilson v. State,* 257 Ga. 352 (359 SE2d 661) (1987). A few cases involve law clerks, but are unlike the situation now before us. See *Todd v. State,* 261 Ga. 766 (14) (410 SE2d 725) (1991) (prosecutor employed by the district attorney's office during defendant's trial became law clerk for judicial circuit while motion for new trial was pending); *Potts v. State,* 259 Ga. 96 (27) (376 SE2d 851) (1989) (former law clerk became defendant's attorney); *Pope v. State,* 256 Ga. 195 (26) (345 SE2d 831) (1986) (prosecutor who worked on state's brief on direct appeal had been law clerk during defendant's trial). The situation in this case is unique because English occupied the job of criminal defense attorney and law clerk in the same court *at the same time.*

We conclude that an actual conflict of interest existed in this case and reverse the convictions. There is no need to embark on an analysis of *Cuyler,* supra, and its progeny: the conflict here is obvious and, given the enormity of the penalty in this case, completely impermissible. Sallie did not waive his right to conflict-free representation. The evidence is uncontroverted that he was never informed of English's role as the law clerk for the Waycross Judicial Circuit.

Sallie's lawyer represented a capital defendant in the same court in which he was a full-time law clerk. We cannot allow such a conflict of interest to exist in a death penalty case. See *Chapel v. State,* 264 Ga. 267 (443 SE2d 271) (1994) (attorney disqualified in capital case due to conflict of interest and appearance of impropriety); *Fleming v. State,* 246 Ga. 90, 93 (270 SE2d 185) (1980) (slight conflict of interest not permitted in death penalty case); Code of Professional Responsibility, Canon 9. We therefore reverse and remand for a new trial.

3. Our disposition of the conflict-of-interest claim renders the

consideration of Sallie's remaining enumerations of error unnecessary.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 18, 1998.

*Palmer C. Singleton III, Christopher M. Johnson, John R. Thigpen,* for appellant.

*Richard E. Currie, District Attorney, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Wesley S. Horney, Assistant Attorney General,* for appellee.