S07A0912. BRITT v. THE STATE.<br>S07A1023. GEORGIA PUBLIC DEFENDER STANDARDS<br>COUNCIL v. SANDERS.<br>S07A1024. RAMSEUR v. THE STATE.<br>(653 SE2d 713)

MELTON, Justice.

Pursuant to a contract with the Office of the Georgia Capital Defender ("Capital Defender"), Walter M. Britt acts as lead counsel for criminal defendant Donald Steven Sanders in a case in which the State is seeking the death penalty. Douglas A. Ramseur, an employee of the Capital Defender, is also counsel for Sanders. Prompted by funding concerns relating to capital cases in general and the potential for inadequate funding in their representation of Sanders in particular, Sanders' attorneys served subpoenas for production of evidence regarding Georgia's indigent capital defendant funding crisis on the Executive Director of the Georgia Public Defender Standards Council ("Council"), various other Council executives, and the Director of the Capital Defender. The Council moved to quash the subpoenas, but the motion was denied in an order dated February 13, 2007.

The funding concerns also prompted Sanders' attorneys to file a motion challenging the constitutionality of "The Funding Scheme For Capital Indigent Defense Mandated By OCGA § 17-12-120 Through

OCGA § 17-12-128," and a "Motion for Payment of Adequate Compensation to Counsel." However, because (1) Ramseur is an employee of the Capital Defender, (2) Britt's compensation as a contracted attorney is controlled by the Capital Defender, (3) the trial court had subpoenaed the Capital Defender's Executive Director and the Council's Director as witnesses who would testify at any hearing on issues relating to the funding for indigent capital defense, and (4) the Council had moved to quash the subpoenas relating to the funding for indigent defense, Sanders' attorneys argued that they had been placed in an adversarial position with respect to their employers (the Council and the Capital Defender), and that this conflict of interest could adversely affect their representation of Sanders. In connection with this argument, at a February 6, 2007 motions hearing, Sanders' attorneys informed the trial court that they would not proceed with any motions in Sanders' case until conflict free counsel were appointed and the counsel advised Sanders of whether the conflict with his current attorneys could be waived. Even after the trial court expressly ordered Sanders' attorneys to proceed with the motions hearing, they still refused to do so. Accordingly, the trial court held Britt and Ramseur in direct criminal contempt and ordered each of them to serve 24 hours in jail and pay a $500 fine.

In Case No. S07A1023, the Council appeals from the denial of its motion to quash. In Case Nos. S07A0912 and S07A1024, Britt and Ramseur appeal from the trial court's order holding them in contempt. For the reasons that follow, we reverse in Case No. S07A1023 and affirm in Case Nos. S07A0912 and S07A1024.

### Case No. S07A1023

1. The trial court's February 13, 2007 order states in relevant part that the Council must produce

> [a]ny and all records and documents relating to the expenditure of funds by the [Council] and/or the [Capital Defender] to any outside counsel and/or contract counsel defending any indigent person accused of a capital felony for which the death penalty was or is being sought from January 1, 2005 through the present.

The order goes on to provide that, although the Council "may redact information from those records that it believes to be covered by the attorney-client privilege and work product doctrine," the Council cannot redact information on "the number of hours worked, rate of pay, total fees paid, expert's name, [and] expert's fees and rate of pay."

The order also compelled the Council to "produce all [responsive] records . . . concerning Brian Nichols' case to the Court in un-redacted form."

While the Council makes several substantive arguments as to why the records referenced in the order are not subject to discovery in Sanders' case, Sanders does not respond directly to most of these substantive arguments. Sanders primarily argues in his brief that the appeal should be dismissed because the February 13, 2007 discovery order is not a final judgment that is subject to a direct appeal. See OCGA § 5-6-34. However, the discovery order here is directly appealable because it falls squarely within the purview of the collateral order doctrine.

As this Court recently reiterated in *Fulton County v. State*, 282 Ga. 570, 571 (1) (651 SE2d 679) (2007), the collateral order exception is to be applied if the order being appealed

> (1) resolves an issue that is "substantially separate" from the basic issues to be decided at trial, (2) would result in the loss of an important right if review had to await final judgment, and (3) completely and conclusively decides the issue on appeal such that nothing in the underlying action can affect it.

The order being appealed here involves matters that are "wholly unrelated to the basic issues to be decided in [Sanders'] criminal case." Id. Further, an appeal would conclusively resolve the discovery issue here "such that nothing in the underlying action c[ould] affect it." Id. Finally, the important rights of a number of indigent capital defendants would be compromised if the Council had to await final judgment before seeking review of the discovery order. For example, by forcing the Council (1) to reveal the names and pay rates of all experts from indigent capital cases from January 2005 to the present, and (2) to produce all responsive documents in the Brian Nichols case in un-redacted form, the order compels the Council to improperly expose the strategies being employed by the attorneys in scores of pending capital cases. See, e.g., *Wellons v. State*, 266 Ga. 77, 81 (2) (463 SE2d 868) (1995) (trial court erred by ordering defendant "to disclose before trial the identities and reports of all experts consulted by the defense, whether or not those experts would be called to testify"). Once this information is revealed, the damage will have already been done, and an appeal after a final judgment in Sanders' case could never rectify the harm. See *In re Paul*, 270 Ga. 680 (513 SE2d 219) (1999) (order requiring non-party reporters to disclose

privileged information subject to direct appeal). Because the February 13, 2007 order satisfies all elements of the collateral order exception, the ruling is properly subject to a direct appeal. Id. at 683.

With respect to the substantive merits of the Council's appeal, the Council correctly argues that the trial court erred in denying its motion to quash. Indeed, the documents requested here have no bearing on Sanders' guilt or innocence and are entirely irrelevant to Sanders' criminal case. See, e.g., *Owens v. State*, 248 Ga. 629, 630 (284 SE2d 408) (1981) (relevant evidence is that "which logically tends to prove or to disprove a material fact which is at issue in the case") (citations and punctuation omitted). Moreover, the general funding that other capital defendants may have received has nothing to do with the funding of Sanders' specific defense. The trial court erred in failing to quash the subpoena. See OCGA § 24-10-22 (b) (1) (court may properly quash subpoena that is "unreasonable and oppressive").

## Case Nos. S07A0912 and S07A1024

2. Britt and Ramseur contend that the trial court erred by holding them in contempt for refusing to comply with the trial court's direct order to proceed with the February 6, 2007 motions hearing. Specifically, they claim that due to their unresolved conflict of interest, they properly refused to proceed with any pending motions in Sanders' case. However, a trial court has broad power to impose summary punishment for contempt based on "[d]isobedience or resistance by any officer of the courts . . . to any lawful writ, process, order, rule, decree, or command of the courts." OCGA § 15-1-4 (a) (3). Moreover, "[t]he disobedience of an unsuperseded order within the jurisdiction of a court is a contempt of court, even though the order is erroneous." *Anderson v. Dowd*, 268 Ga. 146 (485 SE2d 764) (1997); *Pearson v. George*, 211 Ga. 18 (3) (83 SE2d 593) (1954) ("[I]f the court has jurisdiction to make [an] order, it must be obeyed however wrong it may be").

Here, as the trial court made clear at the February 6 hearing, Britt and Ramseur had filed one hundred six motions in Sanders' case prior to the hearing — the vast majority of which had nothing to do with any dispute over funding in indigent capital defense cases — and only "one or two" of all of the one hundred six motions had been resolved prior to the hearing. The trial court also informed the parties that they could agree among themselves the order in which the pending motions would be argued, and that the motions considered at the hearing would "not necessarily require [the presentation of] evidence . . . depending on what the counsel . . . worked out." Thus, any motions requiring the presentation of evidence connected to indigent

capital defense funding, the source of Britt and Ramseur's conflict, were not required to be resolved at the February hearing. Despite this fact, and despite the fact that the discovery dispute that created the conflict of interest was "wholly unrelated to the basic issues to be decided in [Sanders'] criminal case" (*Fulton County*, supra, 282 Ga. at 571 (1)), Britt and Ramseur nevertheless refused to participate in a hearing on *any* motions, even those motions that had nothing to do with their conflict of interest, after the trial court directly ordered them to do so. In essence, the attorneys attempted to use a collateral conflict of interest that was (1) of their own making; (2) that had nothing to do with the underlying issues of the case; and (3) that involved documents requested on matters outside the scope of permissible discovery; to defy a lawful court order to resolve nearly 100 pending motions that had no bearing on their conflict and that were directly related to their client's case. Such defiance did not relieve Britt and Ramseur of their obligations, as officers of the court, to comply with the court's order to proceed with the motions hearing. Indeed,

> [i]f a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect. The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed . . . until it is reversed by orderly and proper proceedings. . . . Such orders must be complied with promptly and completely, for the alternative would be to frustrate and disrupt the progress of the [court proceedings] with issues collateral to the central questions in [the case].

(Citations and punctuation omitted.) *Maness v. Meyers*, 419 U. S. 449, 458-459 (II) (95 SC 584, 42 LE2d 574) (1975). Thus, to the extent that Sanders' attorneys believed that the trial court erred by ordering them to proceed despite their conflict of interest, their remedy was to appeal, not to disobey the trial court's direct order to continue with the motions hearing. See *Pearson*, supra, 211 Ga. at 18. Even if the trial court's ruling were ultimately found to be incorrect on appeal (a question we need not reach here), this would not change the fact that, at the time that the order was given, Sanders' attorneys were obligated to follow it. See, e.g., *Bo Fancy Productions v. Rabun County Bd. of Commrs.*, 267 Ga. 341 (3) (478 SE2d 373) (1996) (trial court

properly held parties in criminal contempt for violating erroneously issued injunction). The trial court had jurisdiction over the parties and had the authority to order them to proceed. The trial court therefore properly found the attorneys to be in direct criminal contempt when they refused to comply with the court's lawful order. See, e.g., *Balter v. Regan*, 63 NY2d 630 (468 NE2d 688) (1984) (public defender properly found in direct criminal contempt for refusing to proceed with trial even though defender had good faith belief that conflict of interest impacting defendant's constitutional right to counsel prevented him from going forward). To hold otherwise would undermine a trial court's legitimate authority to hold parties in contempt for failing to follow its lawful directives. *United States v. Dickinson*, 465 F2d 496, 509 (5th Cir. 1972) ("People simply cannot have the luxury of knowing that they have a right to contest the correctness of the judge's order in deciding whether to wilfully disobey it. Court orders have to be obeyed until they are reversed or set aside in an orderly fashion") (citation and punctuation omitted).

*Judgment reversed in Case No. S07A1023. All the Justices concur. Judgments affirmed in Case Nos. S07A0912 and S07A1024. All the Justices concur, except Hunstein, P. J., and Benham, J., who dissent.*

HUNSTEIN, Presiding Justice, dissenting in part.

I concur fully with Division 1. However, I must respectfully dissent to Division 2, in which the majority affirms the imposition of criminal contempt against attorneys Britt and Ramseur. The record reveals that during a hearing held on February 2, 2007, the trial court expressly recognized that a conflict of interest had arisen in the case that so affected the representation of Sanders provided by Britt and Ramseur that it was necessary to appoint Sanders a third attorney to advise him on the conflict. Nevertheless, at a hearing held four days later, while resolution of that conflict of interest was pending, the trial court ordered counsel to proceed in their representation of Sanders and reach the merits of motions filed in this death penalty case. Counsel respectfully declined to do so because of the conflict of interest. The trial court held them in criminal contempt of court because of their refusal.

Although the majority acknowledges that counsel faced a conflict of interest at the time they declined to follow the trial court's order, it nevertheless upholds the trial court's contempt ruling on the basis that the conflict of interest did not justify counsel's refusal to proceed. The basis for the majority's holding is that counsel's conflict of interest involved "collateral" matters that were " 'wholly unrelated to the basic issues to be decided in (Sanders') criminal case' " and that

affected "only 'one or two' of all of the ... motions" that could have been addressed at the hearing. Majority Opinion, p. 749.

The importance of ensuring that defense counsel is not subject to any conflict of interest that might dilute loyalty to the accused has been long and consistently recognized: "[t]he right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client. [Cit.]" *Von Moltke v. Gillies*, 332 U. S. 708, 725 (68 SC 316, 92 LE 309) (1948). "This Court has stressed that '(u)ndivided loyalty is an essential element of the right to counsel.' [Cit.]" *Howerton v. Danenberg*, 279 Ga. 861, 862 (1) (621 SE2d 738) (2005). "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest. [Cits.]" *Wood v. Georgia*, 450 U. S. 261, 271 (101 SC 1097, 67 LE2d 220) (1981). Thus, in order for Britt and Ramseur to provide Sanders with effective assistance of counsel, their representation had to be "untrammeled and unimpaired" by conflicting interests, *Glasser v. United States*, 315 U. S. 60, 70 (62 SC 457, 86 LE 680) (1942), not "diluted by conflicting interests or inconsistent obligations." (Citations and punctuation omitted.) *Howerton*, supra at 864 (1).

Furthermore, this is a case in which the State is seeking the death penalty. We have recognized that even a "slight conflict of interest [is] not permitted" in death penalty cases. *Sallie v. State*, 269 Ga. 446, 448 (2) (499 SE2d 897) (1998). That is true even where the conflict may be irrelevant to a death penalty defendant's guilt or innocence. *Fleming v. State*, 246 Ga. 90, 93 (270 SE2d 185) (1980). In accordance with this position, this Court has determined that conflicts of interest wholly unrelated to the basic issues to be decided in the criminal case were sufficient to preclude counsel from effectively representing death penalty clients. See *Howerton*, supra, 279 Ga. at 862 (1) (defense counsel ineffective based on conflict created by concurrent representation of death penalty client and prosecutor in unrelated federal case); *Sallie*, supra, 269 Ga. at 447 (2) (defense counsel ineffective based on conflict created by simultaneous employment as counsel for defendant and as law clerk within judicial circuit). See also *Chapel v. State*, 264 Ga. 267 (443 SE2d 271) (1994) (attorney disqualified in capital case due to conflict of interest over his representation of county and its officials in unrelated legal matters).[1]

---

[1] As a matter of interest, I would note that one of the two attorneys appealing the contempt citation issued here for counsel's refusal, due to a conflict of interest directly related to this case, to represent Sanders, is the same attorney held disqualified, due to a conflict of interest unrelated to that case, from representing the death penalty defendant in *Chapel*.

The majority would compel an attorney to compartmentalize his loyalties and proceed with representation of his client as long as the matter at hand did not directly involve the subject matter regarding which counsel's loyalties were divided. The majority's holding thereby ignores this Court's recognition that no conflict of interest is permissible for counsel in death penalty cases and is directly contrary to the rule that a criminal client's Sixth Amendment right to effective counsel requires that counsel's loyalty be undivided by conflicts of interest. Nothing in the cases cited by the majority supports the result it reaches here. See *Maness v. Meyers*, 419 U. S. 449 (95 SC 584, 42 LE2d 574) (1975) (counsel could *not* be held in contempt for advising client in civil case not to produce evidence counsel believed would incriminate client even though trial court had not yet ruled on admissibility of evidence); *Matter of Balter v. Regan*, 63 NY2d 630, 631 (1984) (defense counsel's belief, unsupported by any court ruling, that conflict of interest existed did not justify counsel's refusal to obey court's order to proceed).

Moreover, even if a division of an attorney's loyalties were ever feasible, it would not apply to the conflict of interest faced by counsel in this case because the conflict arose out of payment of counsel's fees for the services to be rendered in their representation of Sanders. It is well established that potential conflicts of interest may exist between counsel and client based on an attorney's private pecuniary interests. E.g., *United States v. Magini*, 973 F2d 261, 264 (4th Cir. 1992) (conflict of interest arising from forfeiture provision affecting attorney fees). A conflict over the fees counsel seeks to be paid for those services he may render his client would necessarily permeate every aspect of counsel's representation of that client.

"Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest. [Cit.]" *Strickland v. Washington*, 466 U. S. 668, 688 (104 SC 2052, 80 LE2d 674) (1984).

> "[T]he right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial." *Bonin v. California*, 494 U. S. 1039, 1044 [(110 SC 1506, 108 LE2d 641)] (1990). . . . When an attorney has a conflict of interest, that attorney violates his duty of loyalty to his client and "fails to provide effective assistance of counsel." [Cit.]

*United States v. Edelmann*, 458 F3d 791, 806-807 (8th Cir. 2006). I would recognize that counsel here acted in compliance with Sanders'

Sixth Amendment right to effective assistance of counsel when they declined to ignore a court-recognized conflict of interest and that they thus properly refused the trial court's order to proceed with divided loyalties at the motions hearing in this death penalty case. Therefore, I respectfully disagree with the majority that the trial court properly held counsel in criminal contempt of court.

I am authorized to state that Justice Benham joins this dissent.

DECIDED NOVEMBER 21, 2007 —
RECONSIDERATION DENIED DECEMBER 13, 2007.

*Koehler & Riddick, Christine A. Koehler,* for Walter M. Britt.
*Chandler, Britt, Jay & Beck, Walter M. Britt,* pro se.
*Daniel J. Porter, District Attorney, Jeanette F. Shaw, Richard A. Vandever, Thomas J. Ludlam, Assistant District Attorneys,* for the State.
*Rogers & Hardin, Robert B. Remar, Thomas J. Mew IV, Robert L. McGlasson,* for Georgia Public Defender Standards Council.
*Chandler, Britt, Jay & Beck, Walter M. Britt, Gary Parker,* for Sanders.
*Brian Steel,* for Ramseur.