## S07A1591. EDWARDS v. LEWIS.
(658 SE2d 116)

SEARS, Chief Justice.

In 2002, Michael Edwards filed a pro se petition for writ of habeas corpus challenging his 2001 conviction for cocaine possession. According to Edwards, his trial and appellate attorneys provided constitutionally ineffective assistance of counsel because they were laboring under an actual conflict of interest that significantly affected their representation of him. The habeas court denied the petition after finding that there was no actual conflict of interest. We granted Edwards's application for a certificate of probable cause to appeal and now reverse.

1. In January 2001, a DeKalb County grand jury indicted Edwards for possession of cocaine with intent to distribute. Edwards's trial counsel filed a motion challenging the racial composition of the grand and traverse jury arrays.[1] The trial court denied the motion, and on May 2, 2001, a DeKalb County jury convicted Edwards of the lesser-included offense of simple possession of cocaine. Based on Edwards's status as a recidivist offender, the trial court sentenced him to 15 years in prison. The trial court denied Edwards's motion for a new trial, and on February 20, 2002, the Court of Appeals affirmed his conviction.[2]

On December 6, 2002, Edwards filed a pro se petition for writ of habeas corpus in the Baldwin County Superior Court. Edwards alleged that his trial and appellate attorneys, both of whom were employed by the public defender's office, were laboring under an actual conflict of interest that significantly affected their representation of him, thereby depriving him of his constitutional right to counsel. The habeas court conducted an evidentiary hearing on February 19, 2003, at which Edwards's trial and appellate counsel testified.

The evidence presented at the hearing established that at the time of Edwards's 2001 indictment and trial, the DeKalb County Superior Court was still using data from the 1990 Census in summoning jurors even though reliable data from the 2000 Census was already available. The new data showed a dramatic shift in the racial composition of DeKalb County over the preceding decade. Since 1990, the white population of DeKalb County had decreased from approximately 54% to 36%, while the black or African-American population had risen to 54%. The reliability of the new data was undisputed. Nevertheless, the chief judge of the DeKalb County Superior Court

---

[1] See *Whitus v. Georgia*, 385 U. S. 545 (87 SC 643, 17 LE2d 599) (1967).

[2] *Edwards v. State*, 253 Ga. App. 837 (560 SE2d 735) (2002).

refused to update the database of the computer program used in summoning jurors because the results of the 2000 Census had not yet been declared "official."[3] The jury that convicted Edwards was 58% white.

According to the evidence before the habeas court, the public defender's office approached the judges of the DeKalb County Superior Court to persuade them to update the computer program for summoning jurors with the data from the 2000 Census. Following the appointment of a new chief judge, the judges agreed to do so, but only if the public defender's office would agree not to pursue challenges to the racial composition of the grand and traverse jury arrays in Edwards's case and other "past" cases. The public defender's office assented. Within a month, the database for summoning jurors had been updated. Edwards's trial attorney testified that since that time, he could not recall trying a single case in the DeKalb County Superior Court in which African-Americans did not compose a majority of the jury.

Edwards's trial attorney testified at the habeas hearing that he thought the jury array issue was a strong one. However, he was instructed by his superiors at the public defender's office not to pursue it because of the alleged agreement with the judges. Edwards's trial counsel explained as follows:

> My office . . . had an agreement with the Superior Court Judges that if they would move to fix the problem immediately in future cases and future jury arrays, we would not pursue challenges from the past. That had the effect of throwing people like Mr. Edwards overboard on those kinds of claims. I was uncomfortable with that frankly but it wasn't a decision that I made.

Wanting to preserve the jury array issue, but unwilling to disregard his superiors' commands completely, Edwards's trial attorney decided to follow a middle course. Instead of presenting testimony from a demographer at the hearing on his motion challenging the grand and traverse jury arrays, Edwards's trial counsel instead agreed to stipulate to the introduction of the evidence from another pending case in which the same issue had been raised. As indicated above, the trial court denied the motion.

Edwards's appellate counsel testified at the habeas hearing that she also thought the jury array issue was a strong one. However, her

---

[3] See *Ramirez v. State*, 276 Ga. 158, 159-162 (575 SE2d 462) (2003); *Smith v. State*, 275 Ga. 715, 716-719 (571 SE2d 740) (2002).

investigation of the issue was truncated on direct orders from the management of the public defender's office. She testified as follows:

> [I]t was my understanding that there was an agreement that our office would not raise that claim. And that was not an agreement that I or [trial counsel] made with the court. But this was between our superiors and apparently some court judges. . . . But it came down to us that that was a claim that we had agreed as an òffice not to raise.

As a result, she did not fully investigate the jury array issue, nor did she raise it on Edwards's behalf in the new trial motion or on direct appeal.

The habeas court indicated at the conclusion of the evidentiary hearing that it was seriously troubled by the failure of trial and appellate counsel to pursue the jury array issue zealously or inform Edwards that they could not do so and urge him to secure separate representation if he so desired. The habeas court explained:

> [F]rankly, it bothers me if a trial lawyer or an appellate lawyer knows of an issue that may have merit and they don't bring it. And I realize that these folks couldn't bring it because their boss wouldn't let them. But it seems to me they may have been able to tell Mr. Edwards he might want to get another lawyer somewhere. And I don't know. There's no evidence that they did that.

The habeas court directed the warden to file a brief within 30 days showing why the habeas petition should not be granted.

The warden did not file a brief within 30 days as directed by the habeas court. Instead, more than a year later, on April 13, 2004, the warden filed a detailed 18-page proposed order to deny Edwards's habeas petition. Six days later, before Edwards had an opportunity to respond, the habeas court adopted the warden's proposed order as the order of the court. Edwards filed an application for certificate of probable cause, which this Court granted on September 20, 2005. In a unanimous opinion, we vacated the habeas court's order denying Edwards's habeas petition, explaining as follows:

> We conclude it was fundamentally unfair for the habeas court to decide Edwards was not entitled to habeas relief without allowing Edwards a meaningful opportunity to

respond to the State's allegation, albeit submitted in order form, regarding the jury array and the effectiveness of his counsel.[4]

On remand, Edwards filed a detailed brief responding to the warden's arguments. Edwards also requested a new evidentiary hearing so that he could rebut the warden's factual assertions in the proposed order to deny the habeas petition. In a January 29, 2007 order, the habeas court denied Edwards's request for an evidentiary hearing and again denied his habeas petition. The habeas court concluded that Edwards failed to establish both the deficient performance and resulting prejudice prongs of the *Strickland v. Washington* test for claims of ineffective assistance of counsel.[5] The habeas court then analyzed and rejected Edwards's claims under the standard articulated in *Cuyler v. Sullivan* and reaffirmed in *Mickens v. Taylor* for ineffective assistance of counsel involving an actual conflict of interest after finding that Edwards's attorneys were not laboring under an actual conflict of interest.[6]

On February 22, 2007, Edwards filed an application for certificate of probable cause to appeal the habeas court's second denial of his habeas petition. He filed an amended application on April 24, 2007, which this Court granted. Edwards then filed a timely notice of appeal.

2. The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[7] In a similar vein, the Georgia Constitution of 1983 provides that "[e]very person charged with an offense against the laws of this state shall have the privilege and benefit of counsel."[8] It is well established that the right to counsel protected by the Sixth Amendment and the Georgia Constitution is "the right to the effective assistance of counsel."[9] One component of the right to the effective assistance of counsel is the right to representation that is free of actual conflicts of interest.[10]

---

[4] *Edwards v. Lewis*, 280 Ga. 441, 441 (629 SE2d 248) (2006).

[5] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[6] *Mickens v. Taylor*, 535 U. S. 162 (122 SC 1237, 152 LE2d 291) (2002); *Cuyler v. Sullivan*, 446 U. S. 335 (100 SC 1708, 64 LE2d 333) (1980).

[7] U. S. Const. Amend. VI.

[8] Ga. Const., Art. I, Sec. I, Par. XIV.

[9] *United States v. Gonzalez-Lopez*, 548 U. S. 140 (126 SC 2557, 165 LE2d 409) (2006) (quoting *McMann v. Richardson*, 397 U. S. 759, 771, n. 14 (90 SC 1441, 25 LE2d 763) (1970)); *Black v. State*, 264 Ga. 550, 550 (448 SE2d 357) (1994).

[10] *Wood v. Georgia*, 450 U. S. 261, 271 (101 SC 1097, 67 LE2d 220) (1981); *Turner v. State*, 273 Ga. 340, 342 (541 SE2d 641) (2001). See Ga. Rules of Professional Conduct R. 1.7 (a) ("A

Ineffective assistance of counsel claims are generally evaluated under the two-part deficient performance and resulting prejudice test announced by the United States Supreme Court in *Strickland v. Washington*.[11] However, as the Supreme Court recognized in *Strickland* itself, this two-part test is inapposite under certain unusual circumstances. In some cases, "prejudice . . . is so likely that case-by-case inquiry into prejudice is not worth the cost."[12] Thus, prejudice is presumed where there has been an "[a]ctual or constructive denial of the assistance of counsel altogether" and where "various kinds of state interference with counsel's assistance" are present.[13]

A more limited presumption of prejudice arises where an attorney represents a client despite an actual conflict of interest. In this situation, the attorney "breaches the duty of loyalty, perhaps the most basic of counsel's duties."[14] Moreover, the precise effect on the defense of representation corrupted by conflicting interests can be exceedingly difficult to determine.[15] Requiring a showing of *Strickland* prejudice — i.e., a reasonable probability that but for the conflict of interest, the outcome of the proceeding would have been different — would set the bar for such claims too high. Thus, a defendant or habeas petitioner asserting ineffective assistance of counsel based on an actual conflict of interest need only demonstrate that the conflict of interest existed and that it "significantly affected counsel's performance."[16]

Edwards contends the habeas court erred in finding that his trial and appellate attorneys were not laboring under an actual conflict of interest when they represented him. We agree. The habeas court's assertion that there was no actual conflict of interest is without support in the record. In any event, a habeas court's determination

---

lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client. . . ."). *Howerton v. Danenberg*, 279 Ga. 861, 864 (621 SE2d 738) (2005) ("A defense attorney must be free to use all his [or her] skills to provide the best possible defense for [the] client.") (citation omitted).

[11] *Florida v. Nixon*, 543 U. S. 175, 178, 190 (125 SC 551, 160 LE2d 565) (2004); *Bell v. Cone*, 535 U. S. 685, 695 (122 SC 1843, 152 LE2d 914) (2002).

[12] *Strickland*, supra, 466 U. S. at 692. Accord *Wright v. Van Patten*, ___ U. S. ___ (128 SC 743, 169 LE2d 583) (2008).

[13] *Strickland*, supra, 466 U. S. at 692; *United States v. Cronic*, 466 U. S. 648, 658-659 & n. 25 (104 SC 2039, 80 LE2d 657) (1984). See *Bell*, supra, 535 U. S. at 696, n. 3 (listing examples of situations in which prejudice is presumed).

[14] *Strickland*, supra, 466 U. S. at 692. See *Sallie v. State*, 269 Ga. 446, 448 (499 SE2d 897) (1998) ("Undivided loyalty is an essential element of the right to counsel."); Ga. Rules of Professional Conduct R. 1.7 cmt. [1] ("Loyalty is an essential element in the lawyer's relationship to a client.").

[15] *Holloway v. Arkansas*, 435 U. S. 475, 490-491 (98 SC 1173, 55 LE2d 426) (1978); *Glasser v. United States*, 315 U. S. 60, 75-76 (62 SC 457, 86 LE 680) (1942).

[16] *Mickens*, supra, 535 U. S. at 173. Accord *Cuyler*, supra, 446 U. S. at 349-350.

regarding the presence or absence of an actual conflict of interest is a mixed question of fact and law which this Court reviews de novo.[17] Edwards's trial and appellate attorneys confronted a situation in which their duties to their employer, the public defender's office, directly conflicted with their duties of loyalty and zealous advocacy to their client, Edwards.[18] Worse yet, Edwards's trial and appellate counsel were told by their employer that the instruction not to pursue the jury array issue in Edwards's case was based on a purported agreement with the judges of the DeKalb County Superior Court.[19] We have no difficulty concluding that this situation rises to the level of an ongoing, actual conflict of interest between Edwards's interests and the interests of his trial and appellate counsel.[20]

Furthermore, the record shows that the conflict of interest significantly affected the representation Edwards received from his trial and appellate counsel. It is undisputed that both attorneys believed the jury array issue was a strong one and that they did not pursue the issue as diligently as they otherwise would have because of the alleged agreement between the public defender's office and the DeKalb County Superior Court judges. Edwards was not required to prove anything more to demonstrate a significant effect on his trial and appellate attorneys' representation of him.[21]

---

[17] *Thompson v. Keohane*, 516 U. S. 99, 111-112 (116 SC 457, 133 LE2d 383) (1995); *Sallie*, supra, 269 Ga. at 448. See *Strickland*, supra, 466 U. S. at 698 ("[T]he question whether multiple representation in a particular case gave rise to a conflict of interest . . . is a mixed question of law and fact.").

[18] See Ga. Rules of Professional Conduct 5.2 (a) ("A lawyer is bound by the Georgia Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person.").

[19] The charges made in this case against sitting and former judges of the DeKalb County Superior Court and the management of the public defender's office are serious. It should go without saying that judges may not negotiate deals with defense attorneys not to raise potentially meritorious issues on behalf of their clients. See Ga. Code of Judicial Conduct Canon 3 ("Judges shall perform the duties of judicial office impartially. . . ."). It is equally clear that a public defender cannot ethically instruct his or her staff not to pursue claims on behalf of a client or set of clients without regard to their merit in order to secure some perceived advantage in other cases. Ga. Rules of Professional Conduct R. 1.7 (a), 5.1 (b). There is no such thing as class action representation of criminal defendants. We note, however, that neither the public defender's office nor the judges of the DeKalb County Superior Court are parties to this case. As a result, they have not had the opportunity to dispute the allegations of Edwards's trial and appellate counsel regarding the alleged agreement not to pursue the jury array issue – charges the warden chose to leave unrebutted both in the habeas court and on appeal to this Court.

[20] See Ga. Rules of Professional Conduct R. 1.7 cmt. [4] ("Loyalty to a client is . . . impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client.").

[21] There is nothing in the record to suggest that Edwards validly waived his right to conflict-free representation at trial and on appeal. Ga. Rules of Professional Conduct R. 1.7 (b). Indeed, in light of the facts as shown by the record, it is doubtful that the conflict of interest at issue could have been waived. Ga. Rules of Professional Conduct R. 1.7 (c). See *Gonzalez-Lopez*,

The warden argues that even if the habeas court erred in finding there was no actual conflict of interest, the petition was still due to be denied, because Edwards acquiesced in his appellate counsel's decision not to raise the jury array issue on appeal. However, it is irrelevant whether Edwards approved of his trial and appellate counsel's decision not to vigorously pursue the jury array issue. First, their advice to him was compromised by the ongoing conflict of interest. Second, in ineffective assistance of counsel cases involving an actual conflict of interest, the critical question is whether the conflict significantly affected the *representation*, not whether it affected the outcome of the underlying *proceedings*. That is precisely the difference between ineffective assistance of counsel claims generally, where prejudice must be shown, and ineffective assistance of counsel claims involving actual conflicts of interest, which require only a showing of a significant effect on the representation.

Edwards's trial and appellate counsel were laboring under an actual conflict of interest when they represented Edwards, and they allowed the conflict of interest to affect their representation of Edwards in significant ways. Edwards did not waive his right to conflict-free counsel, and his alleged acquiescence in the decision not to raise the jury array issue on appeal did not render his representation by counsel any less defective. Accordingly, the habeas court erred in denying Edwards's habeas petition.

*Judgment reversed. All the Justices concur.*

DECIDED FEBRUARY 25, 2008 —
RECONSIDERATION DENIED MARCH 31, 2008.

Michael Edwards, *pro se.*

*Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General,* for appellee.

*Sarah L. Gerwig-Moore,* amicus curiae.

---

supra, 548 U. S. at 151-152 ("Nor may a defendant . . . demand that a court honor his [or her] waiver of conflict-free representation."); *Wheat v. United States,* 486 U. S. 153, 160 (108 SC 1692, 100 LE2d 140) (1988) ("[C]ourts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.").