## S13A0301. NORTON v. THE STATE.
### (745 SE2d 630)

HINES, Justice.

David Robert Norton appeals his convictions and sentences for malice murder, arson, criminal attempt to commit the crime of concealing the death of another, possession of a firearm by a first offender probationer, and possession of a firearm during the commission of a felony, all in connection with the shooting death of Amy Ayers ("Amy").[1] For the reasons that follow, we affirm.

---

[1] Amy was killed on October 30, 2007. On January 23, 2008, a Gwinnett County grand jury indicted Norton for malice murder, felony murder while in the commission of aggravated assault, arson, aggravated assault, criminal attempt to commit the crime of concealing the death of another, possession of a firearm by a first offender probationer, and possession of a firearm during the commission of a felony. Norton was tried before a jury December 7-10, 2009, and found guilty of all charges. On December 21, 2009, Norton was sentenced to life in prison for malice murder, twenty years in prison for arson, five years in prison for criminal attempt to commit the crime of concealing the death of another, five years in prison for possession of a firearm by a first offender probationer, and five years in prison for possession of a firearm during the commission of a felony; the remaining guilty verdicts were either vacated by operation of law or merged with crimes for which sentence was entered. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Norton moved for a new trial on December 22, 2009,

Construed to support the verdicts, the evidence showed that Norton was Amy's live-in boyfriend. David Ayers ("David") was Amy's ex-husband; they had two children together. In September or October 2007, Amy went to David's house to discuss the children and spent the night there. On October 7, 2007, Norton sent David an e-mail discussing the incident, and stating, "[t]ake this seriously and to heart . . . that i do not want ANYONE sniffin around my girl." [sic]. On October 26, 2007, Amy told David that she was going to ask Norton to leave. On the morning of October 30, 2007, Amy's son, Wesley Ayers, left the house for school; Amy and Norton were still there. When Wesley returned, there was smoke in the house and he called 911. After extinguishing a fire in an upstairs bedroom, a firefighter found Amy's burned body on the floor; a roll of duct tape was nearby, a sheet was under the body, and the smoke detectors on the first and second floors of the house had been removed from the walls. Amy had been killed by a shotgun blast to the back of her skull; the shot was directed slightly upward from a distance of one foot or less. Two separate fires had been started in the bedroom: one originated on Amy's body and the other in a chair. Debris tested positive for gasoline. A detective spoke to Norton by cell phone shortly after examining the scene; Norton refused to reveal his location and said that he knew Amy was dead.

Norton was found, taken to a law enforcement facility, given his *Miranda*[2] warnings, and interviewed. He said that he and Amy argued, she retrieved a "sawed-off" shotgun from the closet and pointed it at him, they wrestled, the shotgun fell to the floor, and discharged. He also said he did not know how she was shot, and speculated that his thumb had hit the trigger. Norton further stated that, as he did not wish her sons to see Amy's body, he attempted to wrap the body in a sheet with duct tape and move it for burial before they returned from school, but was unable to do so; he then poured gasoline on the body and set it on fire. Although Norton stated that he threw the shotgun into a lake, it was never found.

---

amended the motion on October 13, 2010, amended it again on February 4, 2011, and amended it a third time on February 25, 2011; the motion, as amended, was denied on December 20, 2011, and on January 20, 2012, the court filed an order supplementing the denial of the motion for new trial. On January 20, 2012, Norton filed a notice of appeal; the appeal was docketed in this Court and dismissed on September 27, 2012. In the trial court, Norton moved for an out-of-time appeal on September 22, 2012, and again on October 2, 2012; on October 10, 2012, the trial court granted Norton an out-of-time appeal. On October 17, 2012, Norton filed a notice of appeal; the appeal was docketed in this Court for the January 2013 term and submitted for decision on the briefs.

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

1. The evidence authorized the jury to find Norton guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Norton contends that evidence of his interview with law enforcement investigators, and the written statement he made at the time, should have been suppressed, asserting that he was then under the influence of drugs and alcohol such that his waiver of his *Miranda* rights was not made knowingly and voluntarily. After a *Jackson-Denno*[3] hearing, the trial court denied Norton's motion to suppress.

> In deciding the admissibility of a statement during a *Jackson-Denno* hearing, the trial court "must consider the totality of the circumstances" and must determine the admissibility of the statement under the "preponderance of the evidence" standard. Unless the factual and credibility findings of the trial court are "clearly erroneous," the trial court's decision on admissibility will be upheld on appeal. [Cits.]

*Jones v. State*, 285 Ga. 328, 329 (2) (676 SE2d 225) (2009).

During the hearing, Norton's expert witness, a psychiatrist, testified that Norton reported that, before the interview, he had taken 15-20 pills of Xanax, two pills of Adderall, and had been drinking bourbon and beer. The expert further testified that he had viewed the recording of the interview, had conducted his own interview of Norton, and concluded that Norton had a history of substance abuse that had created in him a tolerance for the substances such that he would appear to be functioning normally, but would not in fact be able to make intelligent decisions, and that, in the expert's opinion, at the time of the interview, Norton was not able to knowingly or intelligently waive his *Miranda* rights. Another expert witness, also a psychiatrist, testified on behalf of the State that she reviewed the interview and, given the statements Norton made and the answers to questions he was asked, he understood that giving a statement to investigators could have legal consequences, did not display a "significant level of impairment," and knowingly, intelligently, and voluntarily waived his *Miranda* rights. The detective who was the primary interviewer testified that he did not promise Norton anything in exchange for speaking with the detective, that Norton appeared to understand both what was occurring and his *Miranda* rights, even discussing the fact that he could not afford an attorney,

---

[3] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

and that he wished to speak with the detective nonetheless. After its own review of the recorded interview, the trial court denied the motion to suppress.

The mere fact that Norton may have been somewhat intoxicated at the time of the interview does not automatically render evidence thereof inadmissible. *Jones*, supra. See also *Shelby v. State*, 265 Ga. 118, 119 (453 SE2d 21) (1995); *Fowler v. State*, 246 Ga. 256, 258 (3) (271 SE2d 168) (1980). The trial court was faced with conflicting evidence, and determined that Norton made his statement knowingly and voluntarily; there was evidence to support this determination; and there is no reversible error in the court's denial of the motion to suppress. See *Miller v. State*, 288 Ga. 286, 286-287 (1) (702 SE2d 888) (2010).[4]

3. Norton contends that the trial court wrongly admitted into evidence two autopsy photographs that showed the victim's head, one with a portion of the scalp excised and one with a portion of the skull removed.

A photograph that depicts the victim after autopsy incisions or after the pathologist changes the state of the body is admissible when "necessary to show some material fact which becomes apparent only because of the autopsy." *Brown v. State*, 250 Ga. 862, 867 (5) (302 SE2d 347) (1983).

*Bunnell v. State*, 292 Ga. 253, 258 (5) (733 SE2d 281) (2013). The photographs aided the medical examiner in testifying as to the range and direction of travel of the shotgun pellets, which, coming from the rear of the right side of Amy's head, served to rebut the defense of accident, and it was not error for the court to admit them into evidence. Id.

4. During closing argument, the State presented a demonstration with a piece of wood 18 inches long, which represented the sawed-off shotgun that Norton told investigators he and Amy struggled over.[5] Norton did not object to the demonstration at trial, but even

---

[4] Although Norton contends that the trial court's written order did not comply with the strictures of *Berry v. State*, 254 Ga. 101, 104-105 (1), n. 6 (326 SE2d 748) (1985), and should therefore be remanded, see *Bryant v. State*, 268 Ga. 664, 667 (6) (492 SE2d 868) (1997), the written order, together with the court's oral pronouncement before trial, indicated that the proper standard was applied as to the matters in controversy, and no remand is necessary. See *Grier v. State*, 273 Ga. 363, 365 (3) (541 SE2d 369) (2001).

[5] The exact nature of the demonstration does not appear in the record; on the day of one of the hearings on the motion for new trial, the parties signed a stipulation that a demonstration occurred, but the stipulation contains only the fact that the piece of wood was 18 inches long and one-and-three-eighths inches wide. Norton has not attempted to supplement the record further.

absent procedural waiver, such a demonstration is not beyond the bounds of permissible argument, and Norton cannot show an abuse of discretion in permitting it. See *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012); *Laney v. State*, 271 Ga. 194, 198 (9) (515 SE2d 610) (1999). Contrary to Norton's contention, nothing in the record indicates that the State introduced new evidence during the closing argument. Compare *Williams v. State*, 254 Ga. 508, 511 (3) (330 SE2d 353) (1985).

5. During deliberations, the jury asked to view the video recording of Norton's statement to investigators, and to have the transcript thereof to refer to during the viewing. After discussion with counsel, the court arranged for the jury to have the recording made available to it to view in the jury room, and for copies of the transcript to be delivered there as well. Although Norton asserts that it was error to do so, the record is clear that he acquiesced in the court's decision, and therefore cannot complain on appeal. See *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997).

6. Norton also contends that, after deciding that the video should be viewed by the jury, with the transcript used for reference, the trial court should have given further instructions regarding the jury's consideration of the video and transcript.[6] However, he did not object at the time and, when the court asked if there were "any objections to what just occurred," responded: "[n]ot from the defense, Judge." As Norton did not object at the time,

> we review this contention for plain error. See *State v. Kelly*, 290 Ga. 29 (1) (718 SE2d 232) (2011); OCGA § 17-8-58 (b). Under this standard, we must determine whether there is an error that has not been affirmatively waived, is clear and obvious, affects the defendant's substantial rights, and "seriously affects the fairness, integrity or public reputation" of the judicial proceedings. [Cit.]

*Durham v. State*, 292 Ga. 239, 240-241 (3) (734 SE2d 377) (2012). Under this standard, assuming without deciding that Norton did not

---

See OCGA § 5-6-41 (f). During his statement to investigators, Norton said he had "chopped" the shotgun down and it was about 18 inches long.

[6] The court instructed the jury that it was not to deliberate while viewing the recording, that the transcript would be taken by the bailiff afterward and not be available during deliberations, and that the recording was to be considered as only one portion of the overall evidence in the case. When the recording was introduced in the case in chief, the court also instructed the jury that the statements made by officers on the recording should not be considered as evidence, and that portions of the audio had been removed from the recording but that no inference should be drawn therefrom.

affirmatively waive error, see *Cheddersingh v. State*, 290 Ga. 680, 683-684 (2) (724 SE2d 366) (2012), Norton cannot show that the court's instruction affected his substantial rights "which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings." *Kelly*, supra at 33 (2) (a) (Citation and punctuation omitted.). The court's instructions in response to the jury's request adequately advised it of the procedure to be followed and, had the court repeated all of its earlier instructions regarding the recording, it would not have altered the outcome of the trial.

7. Norton contends that his trial counsel failed to provide effective representation, and that his motion for new trial founded upon that ground should have been granted. In order to prevail on this claim, he must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " '[W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Norton claims that counsel's representation was ineffective because counsel had an actual conflict in his representation of Norton in light of the fact that counsel had represented Amy in a civil matter some years before she was killed.[7] However, Norton fails to show " 'an actual conflict of interest that adversely affected his attorney's per-

---

[7] As to the prejudice prong of establishing ineffective assistance of counsel, "this Court has identified only three instances in which a petitioner would be authorized to rely upon a presumption to meet his burden of establishing prejudice: (1) an actual or constructive denial of counsel, (2) government interference with defense counsel, and (3) counsel who labors under an actual conflict of interest that adversely affects his performance." *Walker v. Hagins*, 290 Ga. 512, 514 (722 SE2d 725) (2012) (Citations and punctuation omitted.).

formance. (Cit.)' [Cit.]" *Moon v. State*, 288 Ga. 508, 514 (8) (705 SE2d 649) (2011).[8]

> The question of whether an attorney labors under an actual conflict of interest for purposes of the Sixth Amendment generally arises when the purported conflict stems from the attorney's representation of multiple defendants concurrently. See *Mickens v. Taylor*, 535 U. S. at 174-176; *Cuyler v. Sullivan*, 446 U. S. 335, 350 (100 SC 1708, 64 LE2d 333) (1980). This Court has also found a Sixth Amendment actual conflict to occur when the attorney's duty of loyalty to his client conflicts with the attorney's duty to the attorney's employer. *Edwards v. Lewis*, 283 Ga. 345, 350 (658 SE2d 116) (2008). See also *Sallie v. State*, 269 Ga. 446 (2) (499 SE2d 897) (1998) (actual conflict of interest arose where co-defense counsel served simultaneously as the law clerk for the judicial circuit in which his client was being tried).

*White v. State*, 287 Ga. 713, 722 (4) (a) (699 SE2d 291) (2010) (Footnote omitted.) Beyond the fact of prior representation of the victim, and that Amy had worked in the same office complex as counsel, Norton does not advance any basis for finding an actual conflict of interest. There was clearly no simultaneous representation of Amy and Norton. See *Hill v. State*, 269 Ga. 23, 24 (2) (494 SE2d 661) (1998). Nor was there any connection between the representation of Norton and the prior representation of Amy. Id. at 25. As Norton fails to show an actual conflict, much less an effect on counsel's performance, it was not error for the trial court to deny his motion for new trial on this ground. *Moon*, supra.

(b) Norton also claims that counsel failed to properly investigate the case. Pretermitting whether counsel's investigation of the case could be characterized as inadequate, Norton has "failed to show that a more thorough investigation would have yielded any significant exculpatory evidence and thus failed to establish prejudice resulting from the allegedly deficient investigation. [Cit.]" *Shank v. State*, 290 Ga. 844, 848 (5) (a) (725 SE2d 246) (2012).

(c) Although Norton urges that counsel was ineffective for not requesting the court to enter a more complete written order on his motion to suppress, or to request a certificate of immediate review of

---

[8] It is also clear that Norton was aware of counsel's prior representation of Amy, and that in the intervening years, counsel had represented Norton on three other criminal matters, including a domestic violence prosecution in which Amy was the victim; in at least that instance, counsel's representation of Norton was at Amy's request.

the court's interlocutory order, see OCGA § 5-6-34 (a), as discussed above, the motion was properly denied and the court's order does not warrant reversal or remand. Division 2, supra.

(d) Finally, Norton asserts that trial counsel was ineffective in failing to have jury voir dire and the opening statements and closing arguments transcribed. Again, he fails to sustain these assertions on appeal. "The arguments of counsel at trial are not required to be transcribed. OCGA § 17-8-5. Voir dire is not required to be transcribed unless the prosecution is seeking the death penalty. [Cit.]" *Dunlap v. State*, 291 Ga. 51, 53 (3) (727 SE2d 468) (2012). During the hearing on the motion for new trial, counsel testified that these portions of the trial were not taken down because of cost considerations, and that had objectionable questions been asked or argument been made, he would have objected and caused the court to make a record of them to preserve them for appellate review. Counsel's actions were "within the broad range of professional conduct afforded to trial counsel in a non-death penalty case such as the one at bar. [Cit.]" Id. See also *Wright v. State*, 274 Ga. 730, 732 (2) (a) (559 SE2d 437) (2002). Nor does Norton show prejudice; "speculation that error may have occurred is insufficient to show any deficiency on the part of counsel, or prejudice [therefrom], and is insufficient to show reversible error. [Cits.]" *Dunlap*, supra.

*Judgments affirmed. All the Justices concur.*

DECIDED JULY 1, 2013.

*Clark & Towne, Jessica R. Towne*, for appellant.

*Daniel J. Porter, District Attorney, Christa L. Kirk, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine T. Parvis, Assistant Attorney General*, for appellee.