A08A1368. SAVAGE et al. v. E. R. SNELL CONTRACTOR, INC.
A08A1369. GEORGIA DEPARTMENT OF TRANSPORTATION
v. SAVAGE et al.

(672 SE2d 1)

RUFFIN, Presiding Judge.

Plaintiffs Reba Savage, Jack Savage, and Erin Glanton Savage (collectively, the "Savages") sued the Georgia Department of Transportation ("DOT") and E. R. Snell Contractor, Inc. ("Snell"), alleging that the defendants' road widening project created flooding on the Savages' property. Snell moved for summary judgment, and the trial court granted the motion. DOT filed a motion to dismiss, arguing that the Savages' claims were barred based on their failure to give the requisite ante litem notice pursuant to OCGA § 50-21-20, and the trial court granted the motion in part and denied it in part. The Savages appeal in Case No. A08A1368, alleging that the trial court erred in granting summary judgment to Snell. DOT appeals in Case No. A08A1369, contending that the trial court erred in failing to dismiss the Savages' case in its entirety. For reasons that follow, we affirm.

Plaintiff Reba Savage owns property located adjacent to Highway 124 on Sunderland Drive in Snellville. She lives in the home on the property with her son and daughter-in-law, plaintiffs Jack Savage and Erin Glanton Savage. Shortly before she purchased the property, Reba Savage learned that DOT intended to widen Highway 124. On June 24, 1998, after the closing, Savage sold a portion of the property to DOT and granted them a temporary easement for purposes of the road widening project.

The State awarded Snell the contract for the expansion project, and they began construction sometime during 2004 or 2005. After Snell began clearing and grading the land, the Savages experienced

heavy flooding on their property.[1] According to Reba Savage, on multiple occasions, rainwater broke through silt fence barriers erected by Snell and pooled in her backyard, sometimes standing "for days." The water also entered the house, flooding one of their bedrooms on at least 15 occasions. The Savages also had their septic tank pumped approximately five times during the course of construction after sewage erupted from their toilets, bathtubs, sinks, and flooring.

After repeated complaints to Snell and DOT, the Savages served ante litem notice of their claims on the State on July 25, 2006, pursuant to OCGA § 50-21-26 (a) (2). DOT did not respond, and the Savages filed suit against Snell and DOT, alleging that they were damaged by the defendants' negligence and improper design and construction of the expansion project.

Snell moved for summary judgment, contending that it could not be held liable to the Savages because it constructed the roadway in accordance with the plans and specifications provided by DOT. The trial court agreed and granted Snell's motion. DOT filed a motion to dismiss, alleging that the Savages' claims against the State were barred because they failed to timely provide the requisite statutory ante litem notice. The trial court granted the motion in part and denied it in part, limiting the Savages' claims to those for damages that occurred on or after July 25, 2005. We affirm in both cases, for reasons that follow.

## Case No. A08A1368

1. The Savages contend that the trial court erred in granting Snell's motion for summary judgment. We disagree.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[2] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in a light most favorable to the nonmovant.[3]

Georgia law provides that "a contractor for the State engaged in work on a public project is not liable for injury or damage to private property resulting from the work performed unless that damage or

---

[1] According to the Savages, they did not have flooding problems before Snell began construction on the expansion project.

[2] *Kleber v. City of Atlanta*, 291 Ga. App. 146, 147 (661 SE2d 195) (2008); see OCGA § 9-11-56 (c).

[3] See *Kleber*, supra at 147-148.

injury results from the contractor's negligence or wilful tort."[4] However, "a contractor who is an expert in the design of the type of work being done may not ignore defects in the design."[5] Therefore, Snell can be held liable to the Savages only if it performed its work on the roadway project negligently or if it held itself out as an expert in design.[6]

DOT provided the roadway construction plans and specifications for the expansion project, including erosion and sedimentation plans. The DOT contract provided that Snell was responsible for, inter alia, "providing maintenance" on multiple temporary erosion and sediment control devices, including silt fencing, silt retention barriers, and sediment basins. Lloyd C. McNally, Jr., who surveyed Highway 124 after the roadway construction project was completed, determined that the construction and the storm water structures conformed to the DOT standards and specifications as shown on the construction plans issued for the project. According to Snell's project supervisor, Thomas Byrd, the erosion control devices were installed pursuant to DOT's plans and specifications. Byrd also testified that Snell was not authorized to vary from the plans without approval from DOT.

The Savages have not provided any contrary evidence. Instead, they broadly contend that "Snell's negligence in completing its DOT contract caused nuisance damages to the plaintiffs." Their sole specific inference of negligence is that, on one occasion, a portion of the silt fencing was overrun with silt. But Byrd testified that the fencing was repaired thereafter.[7] Moreover, the Savages have failed to demonstrate that the single instance of the apparent failure of the silt fencing was a result of Snell's negligence or, more importantly, that it caused the flooding and erosion problems from storm water run-off that they allege in their complaint.[8] Instead of pointing to specific evidence to support their contention, the Savages reason that "[if] the erosion control plans were adequate and the erosion controls failed numerous times over a year's span, then the only

---

[4] (Punctuation omitted.) *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 345 (2) (568 SE2d 559) (2002); see *C. W. Matthews Contracting Co. v. Marasco*, 184 Ga. App. 150, 151 (361 SE2d 34) (1987).

[5] (Punctuation omitted.) *Hubbard*, supra; see *David Allen Co. v. Benton*, 260 Ga. 557, 558 (398 SE2d 191) (1990).

[6] See id.

[7] Pursuant to its contract with DOT, Snell was required to clean sediment from all temporary erosion control devices and to replace any damaged device, including silt fencing.

[8] In their complaint, the Savages specifically alleged that "after every heavy and moderate rainfall, from July 2005 to the present, the Savages have endured storm water runoff and erosion to their property," and that "[t]he Savages' yard has been seriously damaged from flooding and storm water runoff erosion, which has resulted in the loss of much of the Savages' yard, landscaping[,] and a large oak tree."

reasonable inference is that E. R. Snell negligently failed to maintain the controls entrusted by DOT." This conclusory statement, unsupported by evidence, is insufficient to demonstrate negligent construction on the part of Snell.[9] Accordingly, the trial court did not err in granting Snell's motion for summary judgment.[10]

2. In the argument portion of their brief, the Savages allege that "[the] plaintiffs are entitled to recover punitive damages and attorney's fees." But the Savages failed to enumerate this argument as error on appeal, and therefore, we cannot consider it.[11] Moreover, they do not indicate how the trial court erred.[12] And the Savages' failure to demonstrate that this issue was raised and ruled upon by the trial court similarly precludes our review.[13]

## Case No. A08A1369

3. DOT moved to dismiss all of the Savages' claims against the State pursuant to OCGA § 9-11-12 (b) (1), alleging that the claims were barred by sovereign immunity based upon the Savages' failure to give adequate ante litem notice within 12 months of the date that the loss was discovered as required by OCGA § 50-21-26 (a) (1). Specifically, DOT alleged that the Savages were aware of their losses as early as March 25, 2005, and, therefore, their July 25, 2006 ante litem notice to the State was untimely and bars the Savages' claims. DOT also argued that the notice was deficient because it failed to specify the time of the flooding occurrences. The trial court granted the motion in part, dismissing the Savages' claims for damages or losses sustained before July 25, 2005. However, the court denied DOT's motion to dismiss for claims for damages sustained on or after July 25, 2005, holding that the flooding and erosion occurrences during that time "constitute new causes of action covered by the plaintiffs' July 25, 2006 ante litem notice." DOT appeals, arguing that the trial court erred in failing to dismiss the Savages' claims against the State in their entirety.

Pursuant to OCGA § 50-21-26 of the Georgia Tort Claims Act ("GTCA"), a person is prohibited from bringing a tort action against the State without first giving notice to the State of the claim. The

---

[9] See *Fraker v. C. W. Matthews Contracting Co.*, 272 Ga. App. 807, 813-815 (3) (614 SE2d 94) (2005); *Hubbard*, supra at 345-346 (2) (a).

[10] See *Fraker*, supra; *Hubbard*, supra.

[11] See *Bill Parker & Assoc. v. Rahr*, 216 Ga. App. 838, 840 (2) (456 SE2d 221) (1995); *Sanders v. Hughes*, 183 Ga. App. 601, 604 (4) (359 SE2d 396) (1987).

[12] See *Marshall v. King & Morgenstern*, 272 Ga. App. 515, 520 (3) (613 SE2d 7) (2005) (argument deemed abandoned where appellant failed to show how the trial court erred).

[13] See *Rental Equip. Group v. MACI, LLC*, 263 Ga. App. 155, 160 (2) (587 SE2d 364) (2003).

statute specifies a detailed procedure for notifying the State of a claim before filing a lawsuit against it.[14] The notice must be given in writing within 12 months of the date that the loss was discovered or should have been discovered,[15] and the contents of the notice must include, inter alia, "[t]he time of the transaction or occurrence out of which the loss arose."[16] "The purpose of these requirements is to ensure that the state receives adequate notice of the claim to facilitate settlement before the filing of a lawsuit."[17] The GTCA requires strict compliance with the ante litem notice requirement; substantial compliance is inadequate under the Act.[18] "We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is evidence supporting them, and the burden of proof is on the party seeking the waiver of immunity."[19]

(a) DOT contends that the Savages' claims against the State should have been dismissed in their entirety. We disagree.

The Savages sent their ante litem notice to the State on July 25, 2006. However, the Savages were aware of losses as early as March 25, 2005.[20] Therefore, as the trial court properly concluded — and the Savages concede — the plaintiffs cannot recover from DOT for the losses and damages they suffered before July 25, 2005.[21]

DOT challenges the trial court's denial of its motion to dismiss the Savages' claims for damage and losses sustained after July 25, 2005, arguing that they are also barred by the plaintiffs' failure to provide timely ante litem notice. We find no error.

The Savages allege that the repeated flooding instances constitute a continuing nuisance and trespass. In their ante litem notice to the State, the Savages alleged that

> the constant flooding of [their] property, after every heavy and moderate rainfall, caused the septic tank on the Savages' property to fail, which had to be pumped out several

---

[14] See OCGA § 50-21-26 (a).

[15] See OCGA § 50-21-26 (a) (1).

[16] OCGA § 50-21-26 (a) (5) (B).

[17] *Williams v. Ga. Dept. of Human Resources*, 272 Ga. 624, 625 (532 SE2d 401) (2000).

[18] See id.; *Dempsey v. Bd. of Regents &c. of Ga.*, 256 Ga. App. 291, 293 (568 SE2d 154) (2002); OCGA § 50-21-23 (b).

[19] (Citation and footnote omitted.) *Williams v. Ga. Dept. of Transp.*, 275 Ga. App. 88, 89 (1) (619 SE2d 763) (2005).

[20] The Savages made a verbal complaint to DOT on or about March 25, 2005, regarding flooding on their property.

[21] See OCGA § 50-21-26 (a) (1); *Clark v. Bd. of Regents &c. of Ga.*, 250 Ga. App. 448, 449 (552 SE2d 445) (2001) (the plaintiff's failure to provide ante litem notice within 12 months of the date of loss as required by the GTCA bars her recovery against the State).

times. . . . In addition[,] the rainfall on fifteen or more occasions from July [2005] to the present has caused storm water flooding and erosion to the Savages' property. . . . The Savages' problems are worse after moderate or heavy rain falls [sic], but they are enduring the loss of enjoyment of their home and the inconveniences caused by the flooding within their home and property seven days a week[,] twenty-four hours a day.

The Supreme Court of Georgia has addressed the issue of continuing torts, explaining that

[a] nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the completion of the act by which the nuisance is created, gives but one right of action, which accrues immediately upon the creation of the nuisance and against which the statute of limitations begins, from that time, to run.[22]

But

[w]here a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. . . . Where one creates a nuisance and permits it to remain, it is treated as a continuing wrong and giving rise, over and over again, to causes of action. . . . Where the structure, though permanent in its character, is not necessarily and of itself a permanent and continuing nuisance, but only becomes such in consequence of some supervening cause which produces special injury at different periods, a separate action lies for each injury thus occasioned.[23]

In *City of Chamblee v. Maxwell*,[24] the Supreme Court of Georgia held that the plaintiff's claims of repeated instances of flooding and soil erosion on his property allegedly caused by land use improperly approved by the City of Chamblee were claims for continuing trespass, "predicated upon the happening of a continuous series of

---

[22] *City Council of Augusta v. Lombard*, 101 Ga. 724, 727 (28 SE 994) (1897).

[23] (Punctuation omitted.) Id. at 727-728.

[24] 264 Ga. 635 (452 SE2d 488) (1994).

events.''[25] The Court reasoned that, because the trespass was continuing in nature, ''a new cause of action arises daily.''[26]

Here, the Savages' claims for nuisance and trespass were continuing, and, therefore, a new cause of action arose with each loss.[27] Thus, the trial court properly denied DOT's motion to dismiss the Savages' claims for losses occurring after July 25, 2005.[28]

(b) DOT further contends that the Savages' ante litem notice was deficient because it failed to identify the dates of the flooding occurrences.[29] This argument is without merit.

The GTCA requires that the ante litem notice ''state, to the extent of the claimant's knowledge and belief and as may be practicable under the circumstances,'' inter alia, ''[t]he time of the transaction or occurrence out of which the loss arose.''[30] Here, the ante litem notice provided by the Savages specifically stated that their property sustained ''constant flooding . . . after every heavy and moderate rainfall'' and that they endured ''the loss of enjoyment of their home and the inconveniences caused by the flooding within their home and property seven days a week[,] twenty-four hours a day.'' As pointed out by DOT, during their respective depositions, the Savages were unable to provide precise dates and times for the losses they sustained.

''It is well established that strict compliance with the notice provisions is a prerequisite to filing suit under the GTCA, and substantial compliance therewith is insufficient.''[31] However, the Supreme Court of Georgia has also emphasized that ''the rule of strict compliance does not demand a hyper-technical construction that would not measurably advance the purpose of the GTCA's notice provisions.''[32] Indeed, ''the GTCA's ante litem notice provisions clearly contemplate the possibility that a claimant may have imperfect information regarding various facets of her claim at the

---

[25] (Punctuation omitted.) Id. at 636.

[26] (Punctuation omitted.) Id.

[27] See id.; *City Council of Augusta*, supra.

[28] We note, however, that each day the nuisance and trespass continue necessarily begins another 12-month period during which ante litem notice must be given pursuant to the GTCA. See *City of Chamblee*, supra at 636-637.

[29] Contrary to the Savages' assertion, DOT did raise this issue before the trial court. DOT apparently did not, however, argue to the trial court that the ante litem notice was deficient because it failed to specify the nature of the loss suffered or the amount of the loss claimed. Therefore, to the extent that DOT makes this argument on appeal, it will not be considered. See *Rental Equip. Group*, supra (''Issues raised for the first time on appeal will not be considered by this court.'') (punctuation omitted).

[30] OCGA § 50-21-26 (a) (5) (B).

[31] *Cummings v. Ga. Dept. of Juvenile Justice*, 282 Ga. 822, 824 (653 SE2d 729) (2007).

[32] Id.

time her notice is submitted."[33] Specifically, the statute only requires that the claimants state the specific time of the occurrence giving rise to the loss "to the extent of the claimant's knowledge and belief and as may be practicable under the circumstances."[34]

Here, the Savages did not know the precise times of the reportedly nearly constant flooding events at the property. Given the contents of their notice, the continuing nature of their claims, and their inability to recall the specific times of the flooding incidents, we conclude that the Savages complied with the plain language of the ante litem notice provisions.[35] Under these circumstances, we find no error in the trial court's ruling on DOT's motion to dismiss.[36]

*Judgment affirmed. Andrews and Adams, JJ., concur.*

DECIDED NOVEMBER 5, 2008 —
RECONSIDERATION DENIED DECEMBER 16, 2008 — ▮

*Larry E. Stewart*, for Reba Savage et al.

*Smith, Moore & Leatherwood, J. Robert Persons, Swift, Currie, McGhee & Hiers, Thomas B. Ward*, for E. R. Snell Contractor, Inc.

*Thurbert E. Baker, Attorney General, Claude M. Sitton, Assistant Attorney General*, for Georgia Department of Transportation.

---

[33] Id. at 825.

[34] OCGA § 50-21-26 (a) (5).

[35] See *Cummings*, supra; OCGA § 50-21-26 (a) (5) (B). Compare *Camp v. Coweta County*, 271 Ga. App. 349, 354-355 (3) (609 SE2d 695) (2005), rev'd on other grounds, 280 Ga. 199 (625 SE2d 759) (2006).

[36] See *Cummings,* supra.