A09A0411. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA v. CANAS.
(672 SE2d 471)

ELLINGTON, Judge.

After an earlier interlocutory appeal,[1] Derek Canas's action against the Board of Regents of the University System of Georgia d/b/a Medical College of Georgia Hospitals and Clinics ("the Board") and MCG Health, Inc. ("MCGHI") remains pending in the Superior Court of Glynn County. This appeal concerns the trial court's order denying the Board's motion to dismiss Canas's administrative failure to warn claim.[2] In the appealed order, the trial court determined that the Board is not immune from suit on the basis of sovereign immunity. The Board appeals, contending that Canas's claim must

---

[1] See *Canas v. Al-Jabi*, 282 Ga. App. 764 (639 SE2d 494) (2006), rev'd in part sub nom., *Kaminer v. Canas*, 282 Ga. 830 (653 SE2d 691) (2007).

[2] Canas claims that the Board failed to discharge a duty to notify him that his transfusions with untested blood and blood products at the Medical College of Georgia Hospital in January 1985 might have exposed him to HIV and to advise him to be tested. See *Canas v. Al-Jabi*, 282 Ga. App. at 765-770.

be dismissed, either because his claim accrued before January 1, 1991 (such that the Georgia Tort Claims Act does not apply), and he failed to show that the Board waived sovereign immunity by purchasing liability insurance, or, alternatively, because he failed to satisfy the ante litem notice requirements of the Act. As explained below, we affirm.

1. As Canas has moved to dismiss this interlocutory appeal based on the Board's failure to comply with the interlocutory appeal procedures set forth in OCGA § 5-6-34 (b), our first consideration is whether we have jurisdiction over this appeal.[3] In its notice of appeal and its response to Canas's motion to dismiss this appeal, the Board contends that this is an authorized appeal from a "collateral order."

"A necessary prerequisite for [a direct] appeal . . . is that the judgment or order appealed from be final or otherwise appealable." (Footnote omitted.) Appellate Handbook for Georgia Lawyers, § 5-1, p. 100 (2007-2008 ed.).[4] A judgment is directly appealable as a final judgment "where the case is no longer pending in the court below, except as provided in Code Section 5-6-35[ (concerning cases requiring an application for appeal)]." OCGA § 5-6-34 (a) (1). A trial court's order is a final judgment within the meaning of OCGA § 5-6-34 (a) (1) "where it leaves no issues remaining to be resolved, constitutes the court's final ruling on the merits of the action, and leaves the parties with no further recourse in the trial court." (Citation and punctuation omitted.) *Miller v. Miller*, 282 Ga. 164, 165 (646 SE2d 469) (2007) (Carley, J., dissenting). In this case, the order appealed from, which denied the Board's motion to dismiss Canas's administrative failure to warn claim, is not a final judgment. Nor is such an order made directly appealable by statute. Generally, where an appellant fails to comply with the interlocutory appeal procedures set forth in OCGA § 5-6-34 (b) and an interlocutory ruling is not otherwise appealable, this Court lacks jurisdiction over a direct appeal filed from an interlocutory ruling and must dismiss it.[5]

---

[3] See also *Waye v. Continental Special Risks*, 289 Ga. App. 82, 83 (656 SE2d 150) (2007) ("In every matter coming to this court we are required to examine the record to make certain we possess jurisdiction.") (citation, punctuation and footnote omitted).

[4] See OCGA §§ 5-6-34 (a); 9-11-54 (b); 9-11-56 (h).

[5] See, e.g., *State v. Ware*, 282 Ga. 676, 676-677 (653 SE2d 21) (2007) (dismissing direct appeal filed by State from order granting a convicted defendant's motion for a new trial); *Waye v. Continental Special Risks*, 289 Ga. App. at 84 (dismissing direct appeal from order dismissing one of multiple defendants); *Wolf v. Richmond County Hosp. Auth.*, 169 Ga. App. 68, 69 (311 SE2d 507) (1983) (dismissing direct appeal from denial of a motion to permit an amendment to a counterclaim and to remove the action from a municipal court to the superior court); *Becker v. Bishop*, 151 Ga. App. 224 (259 SE2d 209) (1979) (dismissing direct appeal from order setting aside a previously entered default judgment and granting defendant's motion for a new trial).

A small class of decisions, however, are excepted from the final judgment rule by the collateral order doctrine. *Coopers & Lybrand v. Livesay*, 437 U. S. 463, 468-469 (98 SC 2454, 57 LE2d 351) (1978). For the collateral order doctrine to apply, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." (Citations and footnote omitted.) Id.[6] Under Georgia law, sovereign immunity is an immunity from suit, rather than a mere defense to liability, and is effectively lost if a case is erroneously permitted to go to trial. *Griesel v. Hamlin*, 963 F2d 338, 340 (IV) (A) (11th Cir. 1992).[7] Based on these authorities, we conclude that an order that denies a motion to dismiss, based on a conclusive determination that the State (or a state officer or employee) is not immune from suit on the basis of sovereign immunity, meets these criteria.[8] Because the interlocutory order at issue meets the criteria of the collateral order doctrine, we have jurisdiction over the Board's direct appeal. *Britt v. State*, 282 Ga. 746, 749 (1) (653 SE2d 713) (2007); *In re Paul*, 270 Ga. 680, 683 (513 SE2d 219) (1999); *Scroggins v. Edmondson*, 250 Ga. 430, 432 (1) (c) (297 SE2d 469) (1982).

2. The Board contends that, if Canas's failure to warn claim arose before January 1, 1991, he must show that the Board waived its sovereign immunity under the law as it existed before the adoption of the Georgia Tort Claims Act, OCGA § 50-21-20 et seq.,[9] and that he failed to do so.[10] Pretermitting whether Canas estab-

---

[6] See also *Britt v. State*, 282 Ga. 746, 748 (1) (653 SE2d 713) (2007) (A direct appeal is authorized from an interlocutory order where "the order being appealed (1) resolves an issue that is substantially separate from the basic issues to be decided at trial, (2) would result in the loss of an important right if review had to await final judgment, and (3) completely and conclusively decides the issue on appeal such that nothing in the underlying action can affect it.") (citation and punctuation omitted); *In re Paul*, 270 Ga. 680, 682-683 (513 SE2d 219) (1999) (accord); *Scroggins v. Edmondson*, 250 Ga. 430, 431-432 (1) (c) (297 SE2d 469) (1982) (accord).

[7] See also *Cameron v. Lang*, 274 Ga. 122, 124 (1) (549 SE2d 341) (2001) (Under Georgia law, qualified immunity is an entitlement not to stand trial rather than a mere defense to liability. The issue of a government employee's qualified immunity must therefore be resolved as the threshold issue in a suit against the officer in his personal capacity.).

[8] Cf. *State of Ga. v. Gober*, 229 Ga. App. 700, 700-701 (494 SE2d 724) (1997) (an order denying the State's motion for dismissal was not directly appealable under the collateral order doctrine because the trial court expressly delayed ruling on whether the defendant was a state officer and whether the State was required to indemnify him and, therefore, the order did not purport to make any final conclusion or finding with regard to the sovereign immunity question).

[9] See OCGA § 50-21-27 (a) (the Georgia Tort Claims Act "shall not apply to tort claims or causes of action which accrued prior to January 1, 1991"); *Curtis v. Bd. of Regents &c. of Ga.*, 262 Ga. 226, 228 (416 SE2d 510) (1992) ("Under Georgia law, a waiver of sovereign immunity occurs at the time that the cause of action arises.") (citation omitted).

[10] Before it was amended in 1991, see Ga. L. 1990, p. 2435, § 1, the Georgia Constitution

lished that the Board waived its sovereign immunity under that body of law, the Board's argument fails because Canas's failure to warn claim accrued *after* January 1, 1991. OCGA § 50-21-27 (a) expressly provides that, under the Act, "[a] tort claim or cause of action shall be deemed to have accrued on the date the loss was or should have been discovered."[11] It is undisputed that Canas did not discover his loss until April 2001, when he was diagnosed with AIDS.[12] Accordingly, Canas must show that the Board waived its sovereign immunity under the Act, not under the preexisting law.

3. The Board contends that, if (as we have concluded in Division 2, supra) Canas's failure to warn claim accrued after January 1, 1991, such that the Georgia Tort Claims Act applies,[13] his claim must be dismissed because he failed to comply strictly with the ante litem notice requirements of the Act.[14] Specifically, the Board contends

---

provided that, with regard to "actions for the recovery of damages," the State waived its sovereign immunity to the extent that the State had obtained liability insurance protection for such claims. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (Ga. L. 1982, p. 2546, § 1). The Board contends that Canas failed to show that the Board had waived sovereign immunity with regard to his failure to warn claim by purchasing liability insurance before January 1, 1991, which would cover his claim.

[11] But see *Bd. of Regents &c. of Ga. v. Oglesby*, 264 Ga. App. 602, 606 (1) (591 SE2d 417) (2003) (suggesting, in dicta, that, despite OCGA § 50-21-27 (a), the Court might not be authorized to apply the discovery rule to determine the date of accrual of a claim for trespass and interference with quasi-property rights arising from the Board of Regents' use and display of the mortal remains of the plaintiff's mother).

[12] See *Kaminer v. Canas*, 282 Ga. at 830.

[13] Since the 1991 amendment, Ga. L. 1990, p. 2435, § 1, the Georgia Constitution provides:

> Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e) (1991). With regard to torts, the Constitution provides:

> The General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act, in which the General Assembly may provide by law for procedures for the making, handling, and disposition of actions or claims against the state and its departments, agencies, officers, and employees, upon such terms and subject to such conditions and limitations as the General Assembly may provide.

Ga. Const. of 1983, Art. I, Sec. II, Par. IX (a) (1991). See *Curtis v. Bd. of Regents*, 262 Ga. at 228 (the 1991 amendment to the Georgia Constitution and the Tort Claims Act enacted under its authority redrew and redefined the terms of the State's waiver of its sovereign immunity but did not withdraw the existing waiver).

[14] The Act requires a claimant to give written notice of the claim, within 12 months of the date the loss was discovered or should have been discovered, to the Risk Management Division of the Department of Administrative Services and to the state government entity alleged to have committed the tort. OCGA § 50-21-26 (a) (1), (2). A notice of claim under OCGA § 50-21-26

> shall state, to the extent of the claimant's knowledge and belief and as may be practicable under the circumstances, the following:

that Canas's ante litem notice failed to mention the failure to warn claim, failed to state the time or place of the occurrence that gave rise to the loss, and failed to state the acts or omissions that caused the loss. "We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is evidence supporting them, and the burden of proof is on the party seeking the waiver of immunity." (Punctuation and footnote omitted.) *Savage v. E. R. Snell Contractor*, 295 Ga. App. 319, 323 (3) (672 SE2d 1) (2008).

The record shows that, within 12 months of the date Canas discovered his loss, he provided notice to the Risk Management Division of the Department of Administrative Services and to the Board that he intended to seek recovery of "all damages properly recoverable under Georgia law flowing from the negligence of" the Board, MCGHI, Dr. Sharon Kaminer, and possibly other health care providers who acted as Board employees or agents. In terms of the time and place of the transaction or occurrence out of which the loss arose,[15] Canas's notice referenced the continuous period of his treatment at the Board's hospitals and clinics through February 2001. In terms of the acts or omissions which caused the loss,[16] Canas's notice referenced the failure of Kaminer and others to take steps that would have led to an earlier detection of Canas's HIV infection/AIDS. The record shows that Canas did not have access to much of the information that supported his failure to warn claim until the Board responded to discovery requests after Canas filed his lawsuit. In requiring that notice be "to the extent of the claimant's knowledge and belief and as may be practicable under the circumstances,"[17] the Act's ante litem notice provisions "clearly contemplate the possibility that a claimant may have imperfect information regarding various facets of [his] claim at the time [his] notice is submitted." *Cummings v. Ga. Dept. of Juvenile Justice*, 282 Ga. 822, 825 (653 SE2d 729) (2007). The evidence in this case authorized the trial court to conclude that, to the extent of Canas's knowledge and belief at the time he gave his ante litem notice, his ante litem notice

---

(A) The name of the state government entity, the acts or omissions of which are asserted as the basis of the claim;
(B) The time of the transaction or occurrence out of which the loss arose;
(C) The place of the transaction or occurrence;
(D) The nature of the loss suffered;
(E) The amount of the loss claimed; and
(F) The acts or omissions which caused the loss.

OCGA § 50-21-26 (a) (5).

[15] OCGA § 50-21-26 (a) (5) (B), (C).

[16] OCGA § 50-21-26 (a) (5) (F).

[17] OCGA § 50-21-26 (a) (5).

satisfied the requirements of OCGA § 50-21-26.[18] Accordingly, the trial court did not err in denying the Board's motion to dismiss based on the allegedly inadequate content of his ante litem notice. *Cummings v. Ga. Dept. of Juvenile Justice*, 282 Ga. at 827; *Savage v. E. R. Snell Contractor*, 295 Ga. App. at 325 (3) (b).

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JANUARY 12, 2009 — 

*Thurbert E. Baker, Attorney General, Jennifer L. Dalton, Assistant Attorney General*, for appellant.

*Ballard, Still & Ayres, William L. Ballard, Smith, Moore & Leatherwood, J. Robert Persons, Hull, Towill, Norman, Barrett & Salley, James S. V. Weston*, for appellee.

---

[18] See *Cummings v. Ga. Dept. of Juvenile Justice*, 282 Ga. at 827 (reversing dismissal of action where ante litem notice, which failed to correctly identify the state government entity actually responsible for the claimant's loss, stated the details to the extent of the claimant's knowledge and belief at the time of the notice); *Savage v. E. R. Snell Contractor*, 295 Ga. App. at 325 (3) (b) (affirming order denying motion to dismiss where ante litem notice, which failed to identify the exact dates and times of the flooding events at the claimants' property, stated the details to the extent of the claimants' knowledge and belief at the time of the notice).